## COLE *v.* HALL.

### Opinion delivered December 16, 1907.

1. LIMITATION—SUIT ON ADMINISTRATOR'S BOND.—A suit upon an administrator's bond, brought within eight years after his account. as. administrator was settled, is not barred by limitation. (Page 154.)

2. ADMINISTRATION—LIABILITY OF HEIRS AFTER SETTLEMENT.—A creditor can proceed in equity against heirs who have received the ancestor's estate for satisfaction of a claim which accrued after the lapse. of the time limited for authenticating it against the administrator, or after the close of his administration. (Page 154.)

3. SAME—LANDS DESCENDED—INNOCENT PURCHASER.—When land descended or devised is conveyed by the heir or devisee to an innocent purchaser for value before the commencement of a suit to charge it with the payment of an equitable claim not enforceable against the executor or administrator, the title of the innocent purchaser will be protected. (Page 155.)

4. SAME—LANDS DESCENDED—MORTGAGEE AS INNOCENT PURCHASER.—Under, the rule that where land descended or devised is conveyed by the heir or devisee to an innocent purchaser before the commencement of a suit to charge it with the payment of an equitable claim the title of such innocent purchaser will be protected, a mortgagee may be an innocent purchaser, but in such case the equity of redemption of lands which have been mortgaged is subject to be sold to pay such claim. (Page 155.)

5. SAME—SALE OF LANDS DESCENDED—LIABILITY OF HEIR.—Where an heir or devisee has sold lands descended or devised to him which in his hands would have been subject to a claim against his ancestor or devisor, he may in equity be held liable to the creditor for the proceeds of the sale. (Page 155.)

6. ESTOPPEL—PERMITTING ONE'S SELF TO BE SUED AS ADMINISTRATOR.—Where an heir who had been administrator of the ancestral estate, without objection permitted himself to be sued as administrator after he had been discharged as such, he will be estopped to deny that he was sued as such and will be liable accordingly. (Page 156.)

7. ACTION—DEATH OF DEFENDANT—REVIVOR.—Upon the death of a defendant during the pendency of a suit, the suit must be revived against his representative or successor within the time prescribed by Kirby's Digest, § § 6312, 6313, or the power to do so without consent ceases. (Page 157.)

Appeal from Yell Chancery Court; *Jeremiah G. Wallace,* Chancellor; reversed.

*Sellers & Sellers,* for appellants.

1. The question of trust relation is not involved here. An administrator is a trustee, but his sureties are not; and if they were trustees, that relation would cease at their death. 33 Ark. 662; 45 Ark. 303; 23 Ark. 604; 39 Ark. 577. At the death of Cole and Parks, liabilities of the administrator for which they were responsible became claims against their estates, and anything that would bar other claims would bar them. 45 Ark. 495; 39 Fed. 373. Sureties' liabilities are strictly construed in their favor, both in law and equity. 60 N. Y. 158; 61 N. Y. 360; 9 Wheat. 680; 82 Cal. 169; 92 U. S. 98.

2. A creditor can not sue the estate or heirs of one of several joint sureties after the surety's death. 24 Am. & Eng. Enc. Law (1 Ed.), 817; 1 Brandt, Suretyship, 139; Stearns's Law of Suretyship, 186; Pingrey, Suretyship, 60.

3. Appellees are estopped by the record. They had in 1878 all the cause of action they ever had, and, having sued appellant Cole as administrator and the surety Parks, they can not now sue upon causes of action existing at that time and proper to be joined in that suit. A cause of action may not be split, and by suing everything proper to be included and not included is waived. 42 Ark. 197; 16 Ark. 474; 23 Ark. 93; 30 Ark. 66; 33 Ark. 727. The sureties having been sued in a court where a judgment could have been rendered against them, this suit is barred. 19 Ark. 420; 41 Ark. 75; 3 N. Y. 173; 37 N. Y. 59; 62 S. W. 10; 79 N. Y. 634; 5 Ark. 424; 20 Ark. 85. See also 7 Ark. 261; 10 Ark. 330; 18 Ark. 354; 60 Ark. 146; 24 Am. Dec. 60; 32 *Id.* 448; 24 Ark. 177; 1 Enc. Pl. & Pr. 153; 19 Ark. 677; 1 Vanfleet's Former Adjudication, § § 173, 174; 4 O. St. 680; 10 Gray (Mass.), 231; 14 Pac. 558; 13 Pac. 442.

4. Appellees are also barred by the statute of non-claim. Cole's estates were settled in 1878, and Parks's estate in 1888. Sandels & Hill's Digest, § 110; 18 Ark. 334; 113 U. S. 449; 45 Ark. 229; 14 Ark. 253.

5. It is alleged in the answer and admitted that appellants have been in adverse possession for about twenty-five years. This is an absolute bar. If not, it is a bar in the absence of satisfactory excuse for the delay. 1 Wood on Lim. 142; 1 Bailey's Eq. (S. C.), 437; 3 Gilman (Ill.), 597; 37 Ark. 159; 46 Ark. 376; 47 Ark. 470; 38 Ark. 475; 56 Ark. 601; 70 Ark. 185; 73 Ark. 440.

6. The right to resort to any kind of proceedings to collect the probate judgment of 1875 was lost in ten years. 48 Ark. 277.

7. If this is a suit on the administrator's bond, it is barred under the eight years' statute. Kirby's Digest, § 5072; 42 Ark. 491; 16 Ark. 474; 30 Ark. 66; 33 Ark. 730. Limitation will run from the time when, by reasonable diligence, the claim could have been matured. 36 Mich. 187; 26 Pa. St. 154.

8. There is neither allegation nor proof on the part of appellees that there are no personal estates of the sureties Cole and Parks sufficient to pay their claims. They must fail for this reason. 68 Ala. 256; Kirby's Digest, § § 186-7 and notes; *Id.* § 206; 76 Fed. 25; 53 S. W. 781; 14 Cyc. 185; 10 Encl. Pl. & Pr. 51; 73 Ark. 445; 112 Am. St. 1019, note 3.

9. Appellees are barred by their own laches. Where a claim is old, and there arises the presumption of laches, facts excusing the delay must be alleged and proved; and that is not sufficient where the enforcement of the claim would inflict a burden or hardship that reasonable diligence would have saved. 1 Bailey (S. C.) Eq. 74; 12 Am. Dec. 367; 54 *Id.* 130; Wood on Lim. 148; 12 Enc. Pl. & Pr. 834; 120 U. S. 377; 68 S. W. 489; 34 O. St. 463; 64 Ark. 345; 41 Ark. 303; 58 S. W. 672; 55 Ark. 92; 2 Dembitz on Land Titles, § 188; 139 N. 693; 23 Pac. 910; 146 U. S. 101; 8 How. 221; 10 L. R. A. 125; 35 Ark. 141; 14 Ark. 62; 19 Ark. 21; 43 Ark. 483; 58 Ark. 589; 76 Ark. 171; 74 Ark. 520.

*L. C. Hall* and *Ratcliffe & Fletcher,* for appellees.

1. The judgment entered by the Yell Circuit Court on August 27, 1900, pursuant to the mandate of this court, was the final determination of a litigation that had lasted over twenty years. It was the only final judgment in the case, and is the judgment sought to be enforced in this case. This action was commenced October 19, 1900, and could not have been begun much earlier. No right of action accrues against the sureties on an administrator's bond until there is a final judgment, and the administration has been closed. 40 Ark. 433; 46 Ark. 260; 63 Ark. 218; 56 Ark. 470; 47 Ark. 222; Kirby's Digest, § 5062; 14 Ark. 246; 18 Ark. 118; 15 Ark. 412; 18 Ark. 334; 23 How. 90; 110 U. S. 414; 33 Ark. 662, 663; 45 Ark. 302; Id. 499; 39 Ark. 580.

2. The sureties were not necessary parties to the chancery proceedings, and their being made parties and afterwards dropped does not affect the issue as to them. 16 Ark. 474; 33 Ark. 727. The question was as to the liability of the administrator. The liability of the sureties is fixed when it has been determined by the courts that the administrator has failed in the performance of a duty required of him by law. 58 Ala. 25; 26 Minn. 433; 60 Miss. 987; 87 N. Y. 572; 80 N. Y. 139; 46 Ark. 260. See also 103 U. S. 205; 20 Ark. 526; 34 Ark. 117; 52 Ark. 499; 40 Ark. 393; 42 Ark. 491; 43 Ark. 171; 48 Ark. 386; Id. 544; 51 Ark. 51; 35 Ark. 137.

3. Claims to be barred within the two years' statute of non-claim must be subsisting at the death of the decedent or coming into existence within two years after the grant of letters of administration. 14 Ark. 246; 17 Ark. 533; 56 Ark. 470; 61 Ark. 527; 66 Ark. 327; 63 Ark. 218. Inchoate and contingent claims are excluded from the operation of the statute. Cases supra; 18 Ark. 334.

A creditor can proceed in equity against the heirs who have received the ancestor's estate for satisfaction of his claim which has accrued after the lapse of time for authenticating it against the administrator, or after the close of his administration. Cases supra; 40 Ark. 433; 32 Ark. 714; 74 Ark. 520. It was not necessary to allege and prove that there were no personal assets. In contending, as appellants do, that the estates of Cole and Parks were fully administered and their adminis-

trators discharged respectively in 1878 and 1888, they necessarily admit that the personal property was disposed of or distributed at the times named.

4. There is no ground here on which to base the claim of laches. The history of the case negatives the idea of staleness of the claim.

*Sellers & Sellers,* for appellants on rehearing.

1. The agreed statement of facts, which is set out in former brief, shows that the sureties were never parties to the suit or any litigation growing out of it after August 23, 1886. When *Tyler* v. *Jacoway,* 50 Ark. 217, was decided, the sureties had all been dropped out of the suit, and in none of the further prosecutions of the suit are any of them mentioned. The opinion errs in the statement that the object of the old chancery suit was to set aside the settlement approved in 1875. The agreed statement shows that that suit was not to, and did not, affect that order, but was merely a suit to recover additional sums claimed to have been omitted from the settlement. This court has treated them as separate. 67 Ark. 343. Chancery was without jurisdiction to do more than determine whether or not the items sued for were recoverable. 45 Ark. 510; 51 Ark. 9.

2. This suit was not brought to set aside the fifth settlement, or to affect the order of distribution. See agreed statement. Suing in chancery for additional amounts did not suspend or put in question the probate judgment. 67 Ark. 343.

3. The opinion incorrectly states that the chancery suit "resulted in charging the administrator with additional items of over five hundred dollars." It is conceded that the litigation resulted in a loss to the estate.

The administration on Cole's estate closed January 16, 1878. If the second suit, brought May 20, 1878, was a continuation of the first (which it was not), the suit abated when the administrator was discharged. There could be no suit, at the time the second was brought, against Cole's administrator as such. Parks died in 1884. As to him the suit abated, unless revived against his personal representative, and that is neither claimed nor shown.

4. The court has not passed upon the defense of non-claim. In addition to citations in former brief, attention is called to Kirby's Digest, § 111 and its interpretation in 15 Ark. 40.

5. The parties are barred by laches.

BATTLE, J. This is the fifth time the estate of Samuel Dickens, deceased, has been involved in suits before this court.

Dickens died intestate on the second day of March, 1867. W. D. Jacoway administered on his estate, filed an inventory, and made settlements, respectively, on the 19th of May, 1868, on the 7th of July, 1869, on the 14th of April, 1870, and the 5th of July, 1871, all of which were approved and confirmed. Subsequently, on the 15th of April, 1875, he filed a fifth settlement, in lieu of the four former ones; purporting to render an account and statement of his administration down to that time from the beginning, which was also duly approved and confirmed. In this settlement the administrator showed that there was money in his hands sufficient to pay 39 cents and 8 mills on all claims allowed against the estate in the fourth class. The probate court made an order directing the administrator to pay that amount on such claims. Under this order the administrator paid to most of the creditors that proportion of their claims, and took from them receipts in full of all claims against the estate. Two of the creditors, Mrs. J. A. Johnston and A. J. Dyer, refused to accept the amount offered in full settlement of their claims, and for that reason they were not paid. They, in behalf of themselves and other creditors of the estate, brought suit in 1878 in the Yell Circuit Court, in equity, against Jacoway and the following sureties on his administrator's bond; R. P. Parks, Jacob Graves, Hiram Dacus, Joseph Gantt, Reuben E. Cole, as administrator of the estate of J. M. Cole, a surety, who had died since the execution of the bond, and Josiah Hawkins, as administrator of the estate of L. T. Brown, another surety who had died. The object of the suit was to set aside the settlements made by Jacoway in the probate court, to restate his accounts, and to hold the sureties liable. A demurrer to the complaint for want of equity was sustained, whereupon plaintiffs rested. The complaint was dismissed, and they appealed. On appeal the demurrer was over-

ruled, and the cause was remanded for further proceedings.
The cause then proceeded to a final hearing, and was heard
upon its merits.

The settlements were held to be fraudulent in many re-
spects, and were restated by the circuit court; and the defend-
ants excepted and appealed to this court. On appeal many of
the allegations of fraud were sustained, and others were over-
ruled. The decree was reversed, and the cause was remanded
with directions to the court to surcharge and falsify the settle-
ments of Jacoway in accordance with the opinion of the court.
This suit resulted in charging the administrator with additional
items, amounting in the aggregate to over five hundred dollars.
We failed to find when this suit was dismissed or abated as to
any of the sureties or their representatives.

After the administration of Dickens's estate was returned
to the probate court, the administrator filed in that court what
is called his seventh and final settlement, and creditors filed
exceptions to the same. An appeal from the judgment of the
probate court as to the exceptions was taken to the circuit court,
and from the judgment of the circuit court an appeal was taken
to this court. The judgment of the circuit court was reversed,
and the clerk of this court was directed to state the account
of the administrator in accordance with the opinion of this
court, which he did, and found the administrator indebted to the
estate on the 15th of April, 1875, in the sum of $2,350.32 and
six per cent. per annum interest thereon from that date. This
statement of the account was approved, and in March, 1900, this
court adjudged "that W. D. Jacoway, administrator of the
estate of Samuel Dickens, deceased, is due said estate, and is
hereby chargeable and charged with, and ordered to pay over
to the parties entitled thereto, said sum of twenty-three hundred
and fifty and 32.100 dollars as of April 15, 1875, said sum to
bear interest at six per cent. per annum from said date until
paid;" and remanded the cause to the Yell Circuit Court for
further proceedings to be therein had according to law and the
opinion of this court.

In pursuance of the mandate of this court, the Yell Cir-
cuit Court, on the 27th day of August, 1900, rendered the fol-
lowing judgment: "It is considered and adjudged by this

court that the defendant, W. D. Jacoway, is due the estate of
Samuel Dickens the sum of twenty-three hundred and fifty dol-
lars and thirty-two cents ($2,350.32), as of April 15, 1875, said
sum to bear interest at six per cent. per annum from said date
till paid. And, it appearing to the court that this judgment is
based upon the final account current of said W. D. Jacoway,
as administrator of said estate of Samuel Dickens, that said
estate has been fully administered and all the assets due said
estate have been collected by the defendant herein, and that
plaintiffs own the only valid claims against said estate that re-
main unpaid, and it appearing that the amount of the indebted-
ness of said W. D. Jacoway to the estate of Samuel Dickens,
deceased, after all just credits are allowed him, is now the sum
of thirty-one hundred and eight dollars and thirty cents, and
that of this sum the amount of twenty-nine hundred and eighty-
six dollars and forty cents is due the estate of Isabella A. John-
ston, and the sum of one hundred and twenty-one dollars and
ninety cents is due the plaintiff, A. J. Dyer; it is therefore
ordered and adjudged that the plaintiff, L. C. Hall, as admin-
istrator of the estate of Isabella A. Johnston, do have and
recover from the defendant, W. D. Jacoway, as administrator
of the estate of Samuel Dickens, said sum of twenty-nine hun-
dred and eighty-six dollars and forty cents, and that plaintiff,
A. J. Dyer, do have and recover of and from the said W. D.
Jacoway, as administrator of said estate, the sum of one hun-
dred and twenty-one and 90-100 dollars, and that both plain-
tiffs recover all their costs in the Supreme Court and this court
expended, etc."

On the 19th day of October, 1900, L. C. Hall, as admin-
isrator *de bonis non* of Isabella A. Johnston, deceased, and An-
drew J. Dyer brought suit in the Yell Chancery Court of the
Danville District of Yell County against R. E. Cole, P. G.
Blevins, and Lizzie Blevins, heirs of J. M. Cole, and Thomas
Parks, heir of R. P. Parks, to make their unpaid claims a
charge against certain lands, owned by the sureties R. P. Parks
and J. M. Cole in their lifetime and descended to the defend-
ants. They alleged in their complaint that Samuel Dickens
departed this life on the second day of March, 1867; that W.
D. Jacoway was, on the 16th day of March, 1867, duly ap-

pointed his administrator and gave bond, conditioned as provided by law, for the faithful performance of his duties as such administrator, with Jas. M. Cole and Robert P. Parks, and others as his sureties; that the estate of Samuel Dickens, deceased, the said W. D. Jacoway and the sureties on his bond as administrator of said estate, whose estates have not been administered upon and finally settled, are insolvent, and plaintiffs are the only creditors of said estate;" that James M. Cole departed this life about the 29th day of February, 1872, leaving surviving him the defendants Reuben E. Cole and Lizzie Blevins, wife of the defendant P. G. Blevins, his only heirs; that Reuben E. Cole was, on the 4th day of April, 1872, appointed administrator of his estate, which has long since been, towit, on the 16th day of January, 1878, settled, closed and the administrator has been discharged; that at the time of his death James M. Cole was the owner of certain lands; that Reuben E. Cole and Lizzie Blevins each inherited from their father property largely in excess of the amount due plaintiffs; that Lizzie Blevins inherited from her father, James M. Cole, and is now in possession of certain lands; that Reuben E. Cole inherited from his father, James M. Cole, and is now in possession of certain lands; that Robert P. Parks, surety as aforesaid, departed this life on or about the 23d day of October, 1884, leaving surviving him the defendant Thomas Parks his son and only heir; that his estate has long since been, towit, on the tenth day of October, 1888, finally settled and administrator discharged; that Thomas Parks inherited from his father and now owns and possesses certain lands; that plaintiffs' claims were not probated against the estates of James M. Cole and Robert P. Parks because they were finally settled and the administrator discharged before the amount of the claims of plaintiffs against them were finally determined. Other facts before alleged were stated in plaintiffs' complaint. They asked that the amounts due them be decreed to be a lien on the lands owned and held by the heirs of James M. Cole and Robert P. Parks as before stated, and that the lien be foreclosed to satisfy their claims.

The defendants answered, and pleaded the statute of limi-

ARK.]                    COLE v. HALL.                    153

tations and non-claim and plaintiffs' neglect and laches in bar
of their suit.

Lizzie Blevins alleged that the lands of James M. Cole had
been partitioned and allotted to his heirs in severalty; that she
had mortgaged the lands allotted to her to John A. Croom for
$600, which was unpaid, and she only owned the equity of re-
demption therein.

Defendant R. E. Cole answered and denied that he owned
any lands by inheritance from his father and which were the
subject-matter of this suit, but alleged that J. M. Cole died in
1872; that he was administrator of his father's estate, and held
the lands of the estate until they were divided and allotted to
their heirs; that he sold the lands which descended to him from
his father's estate, and which are embodied in this suit, to his
brother, James M. Cole, for a valuable consideration, about the
fall of 1882, and repurchased said lands in 1887, together with
the lands descended to his brothers, J. M. Cole and Samuel L.
Cole.

The parties to this suit agreed as follows: "The defend-
ants, R. E. Cole and Lizzie Blevins, have had possession of
the lands alleged in the complaint to have belonged to J. M.
Cole, as his heirs, continuously since his death in 1872, holding
and asserting title to them as their own, and have exercised
the usual acts of ownership." The same agreement was made
as to the possession of defendant, Parks, since his father's
death in 1884.

The defendant R. E. Cole testified that in 1882 or 1883
he sold to his brother, J. M. Cole, his part of his father's estate
for $850; and that J. M. Cole kept it two or three years and
sold it back to him for $1,900. J. M. Cole testified to the same
effect.

P. G. Blevins testified that he was the husband of defend-
ant Lizzie Blevins, formerly Lizzie Cole; that some years prior
thereto said Lizzie Blevins had mortgaged the land inherited
from her father to John A. Croom, and no part of the mortgage
debt had been paid.

This was substantially the evidence adduced at the hear-
ing of this cause as to the lands inherited by defendant from
their ancestors.

The court found that, "as to all the claims sued for which were included in the probate order for distribution made in 1875, plaintiffs are barred of all right to recover thereon by reason of laches, but as to the remainder due from W. D. Jacoway, as administrator of the Dickens estate, amounting to $557.85, together with six per cent. interest thereon from the 27th day of August, 1900, plaintiffs are entitled to recover out" of certain lands descended to the defendant and described in the decree; and decreed that, unless the $557.85 and interest were paid within thirty days, the lands be sold to pay the same.

Plaintiffs and defendants have appealed.

This suit is not barred as to the balance found in the hands of the administrator at the confirmation of his fifth annual settlement and ordered by the probate court to be distributed among creditors. The suit commenced in 1878 by the plaintiffs in this suit against Jacoway and the sureties on his bond to set aside the fifth settlement, and to restate the accounts, and to hold the sureties liable held the statute of limitations in abeyance, and did not terminate until 1893, which was less than eight years before the bringing of this suit, the time prescribed by statute in which actions upon the bonds of administrator shall be commenced. As to the $557.85, the judgment for it upon final settlement by Jacoway, as administrator, was within eight years before the bringing of this suit, and the statute of limitations has not barred its recovery.

It has been frequently held by this court that "a creditor can proceed in equity against the heirs who have received the ancestor's estate for satisfaction of his claim against such estate which has accrued after the lapse of the time limited for authenticating it against the administrator, or after the close of his administration." *Wallace* v. *Swepston,* 74 Ark. 520, 527, and cases cited; *Hall* v. *Cole,* 71 Ark. 601; *Berton* v. *Anderson,* 56 Ark. 470.

When land descended is conveyed by the heir to an innocent purchaser for value before the commencement of a suit to charge it with the payment of an equitable claim not enforceable against the executor or administrator, the title of the innocent purchaser will be protected. *Berton* v. *Anderson,* 56 Ark. 470. And it has been held that a mortgagee may be a *bona*

*fide* purchaser. *Fargason* v. *Edrington*, 49 Ark. 207, 214.

.Where the heir or devisee has sold the descended or devised lands so subject, he may in equity be held liable to the creditor for the proceeds of the sale. This is not the rule of common law when the heir aliened the land before an action was commenced against him to recover the ancestor's debt. 2 Woerner on the American Law of Administration (2 Ed.), Star pages, 1261, 1272, and cases cited.

It follows, then, that the lands of R. P. Parks and James M. Cole, sureties on the bond of Jacoway, as administrator, that descended to their heirs, and have not been sold or conveyed to *bona fide* purchasers, or become the property of innocent parties, can be made liable and sold to pay plaintiffs' claims. For a discussion of this subject, see *Berton* v. *Anderson*, 56 Ark. 470. The equity of redemption of the lands which have been mortgaged is subject to be sold to pay plaintiffs' claims. The heirs who have sold any part of the lands are accountable to plaintiffs for the proceeds of the sale.

The decree of the chancery court is reversed, and the cause remanded with directions to the court to enter a decree in accordance with this opinion.

HART, J., did not participate.

ON REHEARING.

Opinion delivered February 3, 1908.

BATTLE, J. Appellants file a petition for rehearing in this cause, and contend that the suit brought in 1878 by J. A. Johnston and A. J. Dyer against Jacoway and the following sureties on his administrator's bond: R. P. Parks, Jacob Graves, Hiram Dacus, Joseph Gantt, Reuben Cole, as administrator of the estate of J. M. Cole, a surety, who had died since the execution of the bond, and Josiah Hawkins, as administrator of the estate of I. T. Brown, another surety who had died, was barred as to appellants. The facts upon which they rest this contention are as follows: James M. Cole, the surety, departed this life about the 29th day of February, 1872, leaving surviving him the defendants Reuben E. Cole and Lizzie Blevins his only heirs sur-

viving him. Reuben E. Cole was, on the 4th day of April, 1872, appointed administrator of his estate, which has long since been, towit, on the 16th day of January, 1878, settled and closed, and he as administrator was discharged before the beginning of the suit in 1878. Robert P. Parks, surety, departed this life on or about the 23d day of October, 1884, leaving the defendant in this suit, Thomas Parks, his only heir him surviving. On the 10th day of October, 1888, his estate was finally settled, and his administrator was discharged.

Reuben E. Cole was obviously made a party to the suit of 1878 as administrator of James M. Cole, deceased, in the belief that he was still such administrator. He certainly knew that fact. Yet, so far as the record shows, he permitted the plaintiffs to rest in that belief while the suit pended, and made no effort to make known or take advantage of his discharge. He stands in an attitude like that of one who knowingly permits himself to be held out as a member of a partnership and permits another to be misled thereby (*Campbell* v. *Hastings,* 29 Ark. 512) ; of one who misleads another by failing to speak when he should (*Towers* v. *Phelps,* 33 Ark. 465) ; of one whose name is signed to an administrator's bond as surety, without his knowledge, by an unauthorized person, and on being informed makes no objection, but silently permits the administration to proceed on the bond until the administrator commits waste. He can not avoid liability by repudiating the signature. *State* v. *Hill,* 50 Ark. 458. Upon the principles upon which the doctrine of estoppel rests, he is estopped from denying his being such administrator, and is as fully liable in this suit as he would have been had he been administrator of James M. Cole during the entire progress of the suit of 1878.

Mrs. Blevins was not made a party to the suit of 1878, which was probably owing to the fact that the plaintiffs believed that Reuben E. Cole was administrator of James M. Cole, deceased.

Appellants say that on the 23d of August, 1886, "the case was tried on the merits, and a decree entered charging Jacoway, as administrator, with $4,305.35, * * * and against the sureties for costs only, and the sureties were never parties to the suit afterward, or to any litigation growing out of it, and

contend that this suit is barred as to them as to matters involved in the suit of 1878." But this contention is not verified by the record. If such was the fact, they should have set it up as a defense in the present suit. The presumption is in favor of the regularity of the proceedings of courts of record. Inasmuch, however, as the decree of the chancery court will be reversed in part, and appellees concede it, and the record in the case is incomplete, the cause will be remanded with leave to show that fact in the chancery court, and for consequent relief.

It may be that the suit of 1878 was not revived against the personal representative of Robert P. Parks. The statutes in such cases provide that an action against a defendant can not be revived after his death against his personal representative, or against him and the heirs or devisees, or both, of the defendant, unless by consent, until after six months from the qualification of the personal representative; and that it shall not be revived against the representative or successor of the defendant, without the consent of such representative or successor, unless in one year from the time the order therefor could have been first made. Kirby's Digest, § § 6312, 6313; *State Fair Association* v. *Townsend,* 69 Ark. 215. If the suit of 1878 was not revived against the representative or successor of Robert P. Parks, deceased, within the time prescribed by the statutes, the power to do so without consent ceased as to such representative or successor, and from that time the statute of limitations ran against the plaintiffs in favor of such representative or successor as to the matters involved in such suit.

The decree of the chancery court as to $557.85 and interest thereon is affirmed, and the remainder is reversed, and the cause is remanded with directions to the court to proceed and render decree in accordance with the opinions of this court in this cause.