### ASHER v. STULL et al.

No. 7729—Opinion Filed Dec. 5, 1916.

(161 Pac. 806.)

**1. Guardian and Ward—Actions on Bonds —Conditions Precedent—Presentation of Claim.**

It is not necessary that a claim for a fund wrongfully misappropriated by a guardian be presented to the administrator of the surety of such guardian before an action for the recovery thereon can be maintained.

**2. Same—Suit by Ward.**

Where a guardian dies without an accounting and settlement of his affairs having been made in the county court, his ward may maintain an action in the district court against the personal representatives of the sureties on his bond for an accounting and settlement.

**3. Same—Settlement of Account—Judgment.**

In such action the court has jurisdiction to adjust the account of the deceased guardian with the ward, and may hear evidence and allow credits and determine the balance due, if any, by said guardian, and render judgment therefor.

(Syllabus by Hooker, C.)

Error for District Court, Grant County; W. M. Bowles, Judge.

Action by James H. Asher, as guardian of Elizabeth Miller, a minor, against A. J. Stull and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Sam P. Ridings, for plaintiff in error.

J. B. Drennan, R. E. Sullivan, J. G. Mc-

Kelvy, and E. H. Breeden, fo- defendants in error.

Opinion by HOOKER, C. This suit was instituted in April, 1914, by plaintiff in error against the defendants in error, to recover from them as sureties on three separate bonds executed by Julia R. Miller, as guardian of Elizabeth Miller, who was her daughter.

It appears that on the 6th day of October, 1908, Julia R. Miller filed a bond as such guardian in the sum of $500, signed by A. J. Stull as her surety, and thereafter, on the 31st day of May, 1910, she having intermarried with one Castor, she executed another bond in the sum of $3,000 signed by W. C. Caple and J. R. Goldsmith, as sureties; and on the 15th day of May, 1911, she filed in said court, as guardian, a bond in the sum of $3,000, signed by Richard K. Miller and O. J. Roberts as her sureties.

It further appears that Julia R. Castor, who was the guardian aforesaid, died, and one William French was appointed administrator of her estate, and all the property belonging to said estate has been disposed of and distributed; and the said administrator of the estate of Julia R. Castor on the 23d day of January, 1914, presented and filed a report in the guardianship matter of Elizabeth Miller, showing an amount due by Julia R. Castor to her ward in the sum of $2,034.-36, to recover which judgment is sought here.

It also appears that Richard K. Miller, who was one of the sureties upon the bond of Julia R. Castor, died before the institution of this suit, and that his administrator is made a party defendant here.

It also appears that Julia R. Miller was appointed administratrix of the estate of Wylie W. Miller, and that she qualified on the 1st day of February, 1908, as such administratrix, by executing a bond with M. M. Morrow and E. G. Palmer as her sureties, which bond was duly approved, and that on the 6th day of February, 1907, she filed an inventory of said estate, not including the homestead, at $887.09; that on February 21, 1907, she filed a suit as administratrix of said estate, against the Chicago, Rock Island & Pacific Railway Company, for the wrongful death of said deceased; and that on August 5, 1907, the personal estate being less than $1,500, the judge of the county court of Grant county set all the same aside to the widow for the use and support of herself and her minor child; that in February, 1908, a judgment was rendered in her favor against the railroad company for the sum of $4,000, and it is shown by the evidence here that $3,000 of the same was paid to Julia R. Miller as the administratrix of said estate, for the use of herself and her child, Elizabeth Miller.

It further appears from the record that on the 4th day of March, 1908, the said Julia R. Miller loaned James W. Johnson and wife $2,800, taking a mortgage therefor to herself, which was money derived from the railroad settlement; that on the 8th day of September, 1909, the said Julia R. Miller assigned a one-half interest in the Johnson mortgage to O. S. Kelly, and that on the 24th day of May, 1910, she assigned the other one-half interest to the First State Bank of Pond Creek.

That in her first report as guardian on February 5, 1909, she mentions as the property of the minor a note and mortgage for $1,400, executed by J. W. Johnson, and on March 14, 1910, she again mentions the same note in her report, and shows a balance on hand in cash of $148.54. Again on May 5, 1911, she shows a balance due of $155.59, and under the head of "Notes and Accounts" she listed in her report one note of H. H. Castor and Julia R. Castor in the sum of $1,400.

The record further shows where J. H. Asher qualified as the guardian of Elizabeth Miller, after the death of Julia R. Castor, her mother, and that he executed bond about the 8th day of January, 1912, and on the 29th day of March, 1912, presented a claim to William French as the administrator of Julia R. Castor in the sum of $1,875.64. And it further appears that William French, as the administrator of the estate of Julia R. Castor, here attempts as such administrator to settle the account of Julia R. Castor, as guardian of her daughter, and shows an indebtedness to the ward of $1,875.64.

In the petition filed in this cause, the plaintiff prays judgment for $2,070.86. Upon the trial hereof, the court released the estate of Richard K. Miller from any liability, for the reason that the suit was not instituted within three months after the date of the rejection of the claim filed by the guardian with the administrator of said estate, as the undisputed facts show that Richard K. Miller died, and Josephine V. Miller was appointed his administratrix, and on the 8th day of May, 1913, gave the statutory notice to creditors, and that the plaintiff herein, J. H. Asher, as guardian of Elizabeth Miller, filed a claim with her as the administratrix of said estate, which was received by the administratrix on the 30th day of May, 1913, but that she did not either allow or reject said claim, and this suit was filed on the 24th day of April, 1914, and it is the contention of the estate of Richard K. Miller

here that, because the guardian failed to institute his suit upon said claim within three months after the expiration of 10 days of the date of the filing the same, the action cannot now be maintained against said estate. Section 6342 of the Harris-Day Code provides as follows:

"When a claim accompanied by the affidavit required in this article, is presented to the executor or administrator, he must indorse thereon his allowance or rejection, with the day and date thereof. If he allow the claim, it must be presented to the judge for his approval, who must, in the same manner, indorse upon it his allowance or rejection. If the executor or administrator, or the judge refuse or neglect to indorse such allowance or rejection for ten days after the claim has been presented to him, such refusal or neglect is equivalent to a rejection on the tenth day."

And section 6344 thereof provides:

"When a claim is rejected, either by the executor or administrator, or the judge of the county court, the holder must bring suit in the proper court, according to its amount, against the executor or administrator, within three months after the date of its rejection, if it be then due, * * * otherwise the claim is forever barred."

The contention of the defendants in error is that this provision of the statute is mandatory, and that a claim filed with the administrator of an estate is by operation of law rejected on the 10th day, even though the administrator fails to take an affirmative action upon his part. The contention of the defendants in error is supported by Underwood v. Brown, 7 Ariz. 19, 60 Pac. 700, where the court said:

"That neglect or refusal of an administrator to indorse an allowance or rejection of a claim for 10 days after presentation is equivalent to a rejection on the tenth day."

The above authority is likewise supported by Boyd v. Von Neida, 9 N. D. 337, 83 N. W. 329, and by Farwell v. Richardson, 10 N. D. 34, 84 N. W. 558. But the California court, in construing the statute of that state with reference to the same matter in the case of Bank of Ukiah v. Shoemake, Executrix, 67 Cal. 147, 7 Pac. 420, said:

"The statute of limitations commences to run against a rejected claim on the estate of a decedent from the time of its actual rejection by the personal representative of decedent, and not from an implied rejection by failure or refusal of the decedent's representative to indorse a refusal or rejection within ten days after presentation, as such refusal or neglect may, at the option of the claimant, be deemed equivalent to a rejection after such time."

There are other authorities from that state supporting this contention, yet, however, there is some difference between the verbiage of the statutes of Oklahoma and the statutes of California construed by the decision above mentioned. This question, however, has been set at rest in this state by the decision of this court in the case of Donnell v. Dansby, 58 Okla. 165, 159 Pac. 317, wherein Mr. Justice Hardy said:

"Section 6346, Rev. Laws 1910, requires that all claims must first be presented to the executor or administrator before an action can be maintained thereon; and it is claimed by reason thereof plaintiffs' cause of action is barred. Plaintiffs were not creditors of deceased, but are seeking an accounting of a trust fund held by him, which he had wrongfully misappropriated. We are justified in saying this because it is shown that none of this fund came into the hands of his administrator. There was no contractual relation existing between them, but the relation was one created and governed by law. In Am. Trust Co. et al. v. Chitty et al., 36 Okla. 479, 129 Pac. 51, it was held that claims arising in tort or other wrongful acts of the deceased need not be presented to the executor or administrator before an action will lie thereon. A requirement that the claim here involved be presented to the administrator necessarily carries with it the proposition that the administrator has the power to allow or reject such claim, and that the county court in the administration proceedings would be authorized to state the account of the guardian with his wards, allowing or disallowing claims of the wards or the administrator in reference thereto, and in determining the balance due, which, we have seen, it cannot do. While the property of the ward may come into the hands of the administrator upon the death of the guardian, the trust does not descend to him, but is a personal trust reposed in the guardian; and the administrator merely takes possession of the property of the ward coming into his hands, for the purpose of holding and preserving it, until the persons entitled thereto can obtain a settlement of the guardianship affairs in the proper forum, when the rights of all parties may be definitely determined."

Under the authority just quoted we must hold that it was not necessary for this claim of the guardian to have been presented to the administrator of Richard K. Miller, as neither the administrator nor the county court had the authority to settle the accounts of the former guardian with his ward in the administration proceedings.

Second. Under the authority last quoted the lower court was correct in holding that the district court of Grant county had the authority to settle the account of the former guardian, Julia R. Castor; for it is the established law of this state that, where a guardian dies without an accounting and set-

tlement of his affairs, as guardian, having been made to the county court, or with the ward, his former ward may maintain an action in the district court against the personal representatives of the former guardian and the sureties upon his bond as guardian for an accounting and a settlement; and in such action the district court has jurisdiction to settle the accounts of the deceased guardian, and to this end may hear evidence and allow the deceased guardian any credits to which he may lawfully be entitled, and may determine the balance due by him to his ward and render judgment against his sureties therefor.

The lower court held that, the sureties upon the bonds of the guardian were not liable for the $1,400 alleged to have been received by the guardian, as the ward's part of the judgment rendered against the railroad company for the death of her father, because the money had never come into the hands of the guardian from the possession of the administratrix.

Upon an examination of the record it is apparent that the guardian recognized this fund as the property of her ward, because on February 5, 1909, and on March 4, 1910, she sets forth in the reports filed by her, as guardian, certain sums of money due the ward which the evidence shows was the ward's part of the judgment collected from the railroad company.

As we view the law, if the guardian actually had this money in her possession and under her control, then the guardian and her bondsmen are responsible therefor. We do not believe that the sureties upon the guardian's bond can be relieved from liability for the sole reason that the county court never made an order, directing the administratrix of the Miller estate to distribute or pay to the guardian of the Miller child the proportionate part of the estate due it, but the question of liability may be determined here solely by the fact whether the money was in the hands of the guardian or under her control, and, if so, she and her sureties are responsible therefor.

The judgment of the lower court is therefore reversed, and this cause remanded, for proceedings consistent with this opinion.

By the Court: It is so ordered.