(No. 5750. February 2, 1932.)

JOANNA MADISON, Appellant, v. LESLIE H. BUHL, ISLA BUHL HALL and DOLLIE CLAIRE SMITH, Respondents.

[8 Pac. (2d) 271.]

Thos. E. Buckner and Donald Anderson, for Appellant.

George Donart, for Respondents.

LEEPER, J.—The facts are these: The plaintiff has filed an amended complaint in which she alleges the following: That on January 23, 1915, one Joseph Madison was duly appointed guardian of her estate, she being at the time a minor, and continued as such until October 16, 1926, on which date he died; that a guardian's bond was executed in regular form in the principal amount of $2,500 upon which O. E. Sutton and Nelson Buhl were sureties, which bond was properly approved and filed by the probate court of Washington county where the estate was pending, and that ever since its execution the bond has been and now is in full force and effect; that as guardian the said Joseph Madison received the sum of $2,500 in cash belonging to the plaintiff shortly after his appointment, which he diverted to his own use, for which he failed to account and which he never invested for or paid over to the ward; that after the death of the guardian his estate was admitted to probate and an administrator appointed, to whom a claim was presented on

behalf of the plaintiff, which was duly allowed by him in the sum of $4,557 (this representing the principal and interest due upon plaintiff's claim) and upon which there was thereafter paid out of the estate of the deceased guardian in several instalments the sum of $506.77, the last instalment having been paid on the twenty-third day of April, 1930; that the estate of Joseph Madison is insolvent and unable to pay the balance of the amount due the plaintiff; that Nelson Buhl, one of the sureties on the bond, died on April 7, 1926 (six months and nine days prior to the death of the guardian) leaving a will and an estate which was admitted to probate in Washington county, and an executor appointed; that the petition for this probate was filed on April 15, 1926, and an order entered fixing time for hearing for May 1, 1926, but the order admitting the will to probate was entered on April 30, 1926, rather than at the time set; that the executor of the estate of Nelson Buhl first published notice to creditors on May 15, 1926, requiring that claims be presented within four months from that time, but the estate was worth more than $5,000 and therefore the notice should have required claims to be presented within ten months thereafter; that Joseph Madison, as guardian of this plaintiff, did not present a claim on her behalf against the estate of Nelson Buhl within the four months' period, or at all, and that he was incapacitated from so doing; that Leslie H. Buhl, Isla Buhl Hall and Dollie Claire Smith are the sole and only heirs and devisees of Nelson Buhl, deceased; that the said heirs are the sole grantees named in a certain warranty deed executed by Nelson Buhl in his lifetime, on the fourteenth day of July, 1922, whereby he conveyed to them all of his lands, worth in excess of $15,000; that this deed was delivered to a third party to be held by him during the lifetime of Nelson Buhl and upon his death to be delivered to the grantees named therein; that during the lifetime of Nelson Buhl he remained in the possession, use and occupancy of the premises, and he appeared as the record owner thereof; that the said lands were not inventoried as a part of the estate of Nelson Buhl, deceased, and were never probated as a part of his estate; that the transfer thereof was without consideration and in fraud of

creditors and that the grantees have recorded the deeds and now claim to be the owners thereof; that all other property belonging to the estate of Nelson Buhl has been disposed of and the estate was closed and distributed on the thirtieth day of August, 1928; that this plaintiff reached majority on the thirtieth day of September, 1928, and this action was instituted within three years thereafter.

The plaintiff declares on four causes of action and certain phases of the facts are set out in each. The relief prayed for is that an equitable lien be imposed upon the lands acquired by the defendants in amount sufficient to pay the claim of plaintiff arising out of the default of her guardian, and that defendants be required to pay the amount due plaintiff before acquiring title to the lands.

To this complaint general demurrers were lodged and sustained, and upon plaintiff's refusal to further plead, the action was dismissed. From the judgment of dismissal this appeal is taken. Therefore, the sole question to be decided here is whether or not the complaint states a cause of action.

Stripped down to its fundamental legal proposition, in this complaint the plaintiff, a ward who has come of age, invokes equity to effect a settlement of the account of her deceased guardian and to recover the amount found due out of the property acquired by these defendants as heirs, devisees and grantees of a deceased surety upon the bond of the guardian.

Necessarily, the plaintiff can have no right against these defendants other than she would have had against the surety were he alive, and it is essential to know exactly what these rights would be.

Had Nelson Buhl, the surety, been alive at the time that this action was instituted, it seems clear that an action in equity would lie against him for an accounting and judgment in the amount found due.

While the guardian remains alive, ordinarily his accounts must be settled by the probate court, before action can be had against the surety (28 C. J. 1304, sec. 514), but this rule does not prevail if he has died without making an

accounting. Under such circumstances an action may be instituted directly against the personal representatives of the deceased guardian and the sureties for an accounting and judgment in the same action.

"Where an administrator or guardian dies or absconds or is beyond the jurisdiction of the court, the proper method, in order to ascertain whether he is liable, and to what extent, so as to bind the sureties on his official bond, is by a proceeding in the nature of a civil action, wherein the sureties are made parties, and have an opportunity to be heard. *Spencer v. Houghton*, 68 Cal. 82, 8 Pac. 679, *supra; Chaquette v. Ortet*, (60 Cal. 594), *supra.*" (*Reither v. Murdock*, 135 Cal. 197, 67 Pac. 784.)

The rule is affirmed in the following cases: *Johnson v. Henshaw*, 80 Okl. 58, 193 Pac. 998; *Equitable Surety Co. v. Sapp*, 77 Okl. 221, 187 Pac. 917; *Donnell v. Dansby*, 58 Okl. 165, 159 Pac. 317; *Mitchell v. Kelly*, 82 Kan. 1, 136 Am. St. 97, 107 Pac. 782; *Chaquette v. Ortet*, 60 Cal. 594; *Zurfluh v. Smith*, 135 Cal. 644, 67 Pac. 1089; *Slater v. McAvoy*, 123 Cal. 437, 56 Pac. 49.

While there never has been any legal settlement of the guardian's accounts in the matter of this ward's estate, the liability of the guardian was fixed at the time of his death, and the surety may be sued directly, and without prior accounting.

"The conversion of the entire estate fixes the liability of the guardian at the time of his death as definitely as it could be fixed by an accounting." (*United States Fidelity & Guaranty Co. v. Nash*, 20 Wyo. 65, 121 Pac. 541, 124 Pac. 269.)

Having reached the conclusion that the facts as alleged are sufficient to sustain an action in equity against the surety himself, the question arises as to whether or not the action was filed in time to avoid the operation of the general statute of limitations. The complaint alleges that this plaintiff reached the age of majority on the thirtieth day of September, 1928. The complaint was filed on the fourteenth

day of April, 1930. The apposite statute is C. S., sec. 7897, which provides as follows:

"No action can be maintained against the sureties on any bond given by a guardian unless it be commenced within three years from the discharge or removal of the guardian; but if at the time of such discharge the person entitled to bring such action is under any legal disability to sue, the action may be commenced at any time within three years after such disability is removed."

Except for the considerations hereinafter discussed the action was filed before the expiration of the limitation.

However, the legal situation is further complicated by the allegations with reference to the death of Nelson Buhl, and matters subsequently arising which we have heretofore set forth in detail.

■ ■ This state of facts promptly gives rise to this inquiry: Can this action be maintained against these defendants as sole heirs, devisees and donees of the deceased surety, Nelson Buhl, and property acquired by them as such sur-charged with the debt due to this plaintiff?

Passing for the time the objection that the action does not lie until some form of judgment is had or creditor's claim allowed against the estate of Nelson Buhl, deceased, we conclude that, as a general proposition, an equitable action is maintainable against these parties to effect the ends sought in this action. The reasons for the exercise of equity are imbedded in the facts. The defendants took all of the surety's estate, either by descent, devise or conveyance without consideration and the law appears to be plain in the premises.

C. S., sec. 7642, declares that all property is liable for the debts of a decedent. C. S., sec. 7714, provides for the payment of debts. It is fundamental that all property of an estate constitutes a trust fund for the benefit of the creditors. (1 Bancroft's Probate Practice, p. 4, sec. 2; *Dow v. Lillie,* 26 N. D. 512, 144 N. W. 1082, L. R. A. 1915D, 754.)

*Hall v. Cole,* 85 Ark. 144, 107 S. W. 175, lays down the rule as follows:

"It has been frequently held by this court that 'a creditor can proceed in equity against the heirs who have received the ancestor's estate for satisfaction of his claim against such estate which has accrued after the lapse of the time limited for authenticating it against the administrator or after the close of his administration.' "

The rule is sustained in *Chitty v. Gillette*, 46 Okl. 724, 148 Pac. 1048, L. R. A. 1916A, 1181; *City of Springfield v. Clement*, 205 Mo. App. 114, 225 S. W. 120; *Berton v. Anderson*, 56 Ark. 470, 20 S. W. 250.

It is true that the foregoing authorities refer only to actions against heirs and devisees of the deceased surety, while in the instant action the defendants are also charged as donees under a void deed. This, however, will make but little difference in the ultimate outcome, since the defendants are sued in all these capacities, i. e., sole heirs, sole devisees and sole grantees. They are the owners of the land, acquired without consideration, under any decision as to the exact status of their title which might be made here. It appears that equitable relief may be sought against grantees, to the same effect as against heirs and devisees. (*Patty v. Williams*, 71 Miss. 837, 15 So. 43.)

Respondents contend, however, that there must be a valid judgment against the principal before this action will lie in equity to subject this property to the claim of the plaintiff. Inasmuch as the principal is dead, and no judgment can be obtained against him personally, it is apparent that one of two courses must have been pursued by the plaintiff, if it be conceded that the contention of respondents is correct, i. e.: It was necessary for her either to file a claim against the estate of the surety and have it allowed voluntarily or its validity established by subsequent suit, or to have sued the personal representatives of the deceased, directly.

Much of the previous discussion is applicable here relative to the necessity of a separate judgment before this equitable proceeding will lie against these defendants. They are sued as sole heirs, devisees and donees of the deceased. They stand in the place and stead of the deceased, and any recovery

against them can only be to the extent of the property received by them from the ancestor. Under. such circumstances equity will entertain the action and settle all phases of the litigation in one action. Inasmuch as the executor has been long since discharged, and the estate of the deceased surety closed, it is apparent that no direct action can be maintained against him, nor can he be made a party to this action now.

The same reasoning will apply to this situation as was developed with reference to bringing suit against the surety without a legal settlement of the guardian's account. In substance this is an action for the settlement of that account, and for the impressment of a lien in the amount found due upon the property of these defendants. Equity has sole and complete jurisdiction of both phases of the action, and under the cases cited will settle all differences in one action. (*Reither v. Murdock, supra; Chaquette v. Ortet, supra; Zurfluh v. Smith, supra; Slater v. McAvoy, supra; Donnell v. Dansby, supra; Mitchell v. Kelly, supra.*) Besides, under existing conditions it is impossible for plaintiff to obtain a judgment at law against anyone, and the rule must defer to the principle that equity never requires a useless or impossible thing. (*Platt County State Bank v. Frantz*, 33 Wyo. 326, 239 Pac. 531.)

We do not mean to say that, by permitting this action to proceed directly in equity, we are foreclosing the defendants of the right to contest the validity of the claim of plaintiff or the amount due thereon. They have exactly the same rights in the premises as would Nelson Buhl were he alive. There never has been any legal accounting as between this plaintiff and Joseph Madison or his estate which in and of itself would bind either Buhl or these defendants.

Even though we so hold with reference to the requirement of a prior judgment, there yet remains undisposed of the serious and controlling matter as to whether or not this plaintiff was required to plead compliance with the nonclaim statute of the state of Idaho, as a creditor of Nelson Buhl, deceased, before she could maintain this action. That is to

say, is she bound by the provisions of sections 7581, 7582, 7586 and 7588 of the Idaho Complied Statutes, and was she required to file her claim within four months after May 14, 1926, as then required by C. S., secs. 7579 and 7581, and bring suit thereon within three months after notice of rejection? This consideration arises, not because a judgment is prerequisite to this action, but rather as a question of substantive law relating to the probate of decedent's estates. If for any reason the plaintiff is not required by law to comply with these nonclaim statutes, then we believe that this action will lie. If her claim does fall within the purview of the statutes, and she failed to comply therewith, then her action will not lie.

The bond relied upon is in statutory form and jointly and severally bound the sureties in the sum of $2,500. The bond is given pursuant to the requirements of C. S., sec. 7849, which are in brief that the judge must require a bond to the minor to the effect that the guardian will faithfully execute the duties of his trust according to law (specifying them). It further provides that the conditions of the statute form a part of the bond, without being expressed therein.

Chapter 22, Idaho Compiled Statutes, relates to bonds of public officers, and section 448 thereof provides as follows:

"The provisions of this chapter apply to the bonds of receivers, executors, administrators and guardians."

C. S., secs. 429–431 and 433, are also pertinent to this inquiry.

Under the provisions of section 431 this plaintiff is clearly an aggrieved party and may bring suit thereon. This right is also specifically granted by section 7896.

The inquiry as to whether the claim of this plaintiff is such a one as should be filed in the estate of Nelson Buhl, deceased, resolves itself into a double aspect. First: Is the claim one arising upon contract, such as falls within the purview of C. S., sec. 7581; or, second: Is it a claim arising out of the statutory obligations above set forth?

In *Donnell v. Dansby*, 58 Okl. 165, 159 Pac. 317, the decision is to the effect that a ward is not required to present

a claim against the estate of a deceased guardian, but may sue the personal representatives and sureties directly, for the reason that the action does not arise primarily upon contract, but on account of a violation of statutory obligations. by the guardian.

"Section 6346, Rev. L. 1910, requires that all claims must first be presented to the executor or administrator before an action can be maintained thereon; and it is claimed by reason thereof plaintiff's cause of action is barred. Plaintiffs were not creditors of deceased, but are seeking an accounting of a trust fund held by him, which he had wrongfully misappropriated. We are justified in saying this because it is shown that none of this fund came into the hands of his administrator. There was no contractual relation existing between them, but the relation was one created and governed by law. In *American Trust Co. et al. v. Chitty et al.,* 36 Okl. 479, 129 Pac. 51, it was held that claims arising in tort or other wrongful acts of the deceased need not be presented to the executor or administrator before an action will lie thereon. *A requirement that the claim here involved be presented to the administrator necessarily carries with it the proposition that the administrator has the power to allow or reject such claim, and that the county court in the administration proceedings would be authorized to state the account of the guardian with his wards, allowing or disallowing the claims of the wards or the administrator in reference thereto, and in determining the balance due, which, we have seen, it cannot do.* While the property of the ward may come into the hands of the administrator upon the death of the guardian, the trust does not descend to him, but is a personal trust reposed in the guardian; and the administrator merely takes possession of the property of the ward coming into his hands, for the purpose of holding and preserving it, until the persons entitled thereto can obtain a settlement of the guardianship affairs in the proper forum, when the rights of all parties may be definitely determined." (*Donnell v. Dansby, supra.*) (Italics ours.)

In *Asher v. Stull,* 61 Okl. 320, 161 Pac. 808, the court applied this same reasoning to the argument that a claim

must be presented to the estate of a deceased surety, that is, that neither the administrator of the deceased surety nor the probate court had any power to settle or allow the account of the ward against the deceased guardian and that therefore the claim of the ward did not fall within the nonclaim statute.

"Under the authority just quoted we must hold that it was not necessary for this claim of the guardian to have been presented to the administrator of Richard K. Miller, as neither the administrator nor the county court had the authority to settle the accounts of the former guardian with his ward in the administration proceedings." (*Asher v. Stull, supra.*)

By virtue of the statutory provisions above set forth, a guardian's bond is an official bond and the general statutes are applicable. This court has held in two cases that, with reference to the statute of limitations, a suit upon an official bond is not an action upon a contract, but is an action for the violation of the statutory obligations which lie behind the bond. (*Ada County v. Ellis,* 5 Ida. 333, 48 Pac. 1071, followed in *City of St. Anthony v. Mason,* 49 Ida. 717, 291 Pac. 1067.)

In *City of Butte v. Goodwin,* 47 Mont. 155, Ann. Cas. 1914C, 1012, 134 Pac. 670, the court in deciding a similar question of limitations, stated as follows:

" .... for the bond is not a contract in the strict sense of the term. It is a sort of vicarious undertaking—a collateral security for the performance of official duty," which was followed in *Gallatin Co. v. United States Fidelity & Guaranty Co.,* 50 Mont. 55, 144 Pac. 1085. The same rule is applied in California. (*Sonoma County v. Hall,* 132 Cal. 589, 62 Pac. 257, 312, 65 Pac. 12, 459.)

It is obvious that a claim upon an official bond stands upon a different footing than an ordinary claim "arising upon contract." True, there is a contract of suretyship existing by virtue of the written bond, but the fundamental basis which gives rise to this claim is the violation of his statutory duties by the guardian. Regardless of the fact that conditions have arisen which prevent the guardian from

being a party to the action, its original essence remains. The purpose of this action is to fix the responsibility of this guardian imposed by reason of his violation of the statutes pertaining to his office. As stated in *City of Butte v. Goodwin, supra,* "the bond is not a contract in the strict sense of the term. It is a sort of vicarious undertaking—a collateral security for the performance of official duty."

The presentation of a claim to the personal representative of a deceased surety for the violation of statutory duties by a deceased guardian would be a useless thing, since in substance it would amount to a request that such personal representative settle the accounts of the ward and his deceased guardian. The demand is primarily for the settlement of the account, which can only be had in the pending estate of the ward or in a court of equity. Whether the claim had been either allowed or disallowed by the personal representative of the deceased surety or the probate court in the matter of his estate, would bind no one. The claim could not be settled in such a manner and the filing of it would be a nullity. C. S., sec. 7588, applies to claims upon which the representative of the deceased has power to act.

It has been held repeatedly that where a guardian has commingled trust funds with his own and failed to account therefor, the ward became a simple contract creditor of the guardian's estate after death, and was required to present a claim under the nonclaim statute. (*Lathrop v. Brampton,* 31 Cal. 17, 89 Am. Dec. 141; *Roach v. Caraffa,* 85 Cal. 436, 25 Pac. 22; *Davis v. Shepard,* 135 Wash. 124, 41 A. L. R. 163, 237 Pac. 21.) But in none of these decisions was the issue raised or presented which is here being discussed.

"Where there has been no previous final accounting and conclusive judgment, it is self-evidently necessary, in a suit brought on the guardian's bond against the sureties, to investigate all the transactions of the guardian with the estate of his ward, and in order to render judgment for the amount justly due, to allow the defendants to show, not only expenditures of the guardian for the benefit of the ward, but also any payments or advances made for his benefit by the

sureties." (Woerner's The American Law of Guardianship, p. 154.)

There is no requirement in the law that such a claim as this must be presented to the estate of the deceased surety before an equitable action lies for an accounting by the ward, and we do so hold. This probate proceeding does not furnish a plain, speedy and adequate remedy at law to this claimant. A final and binding settlement of the guardian's accounts with this ward must be had either in the matter of the ward's estate or in an equitable action maintainable under the particular conditions herein involved.

In view of the conclusions that we have reached, it is unnecessary for us to consider other matters presented in connection with this phase of the discussion by counsel.

In our opinion the complaint states one, and only one, cause of action, i. e., for an accounting and settlement of the account of the deceased guardian and surcharging the amount found due against the property acquired by these defendants from their ancestor, the deceased surety. The allegations relative to irregularities in the probate proceedings in the estate of Nelson Buhl are immaterial. We are impelled to this position by an application of general equitable principles to the facts at hand. The plaintiff has no other adequate, complete and certain remedy. Jurisdiction over actions for accounting, to establish and enforce trusts and set aside fraudulent conveyances is vested in courts of equity. Equity assumes jurisdiction to avoid a multiplicity of suits and give complete relief in one action. These criterions for the assumption of equitable jurisdiction have been approved by this court in *Coleman v. Jaggers,* 12 Ida. 125, 118 Am. St. 207, 85 Pac. 894, and numerous other cases, and are of universal application.

The judgment of the lower court is reversed and the case remanded for further proceedings in consonance herewith. Costs are awarded to appellant.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.