[No. 9114.   Department One.   November 29, 1910.]

*In re Guardianship of* MURRAY MACKALL.
W. E. LOWRIE, *Respondent,* v. AMERICAN BONDING AND
TRUST COMPANY, *Appellant.*[1]

GUARDIAN AND WARD—ACTION ON BOND—OFFSET—SUPPORT OF WARD
—WAIVER.   Where a mother, having no estate of her own, acted as guardian for her minor son, and filed a report making no charge for support up to that time, but afterwards converted the estate, the report shows that she did not intend to charge for support previous to the report, and in the absence of other evidence overcomes the presumption to the contrary; and the surety on her bond cannot offset against its liability a charge in favor of the guardian for support prior to the filing of the report.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered June 2, 1910, upon stipulated facts, disallowing, in part, an offset in favor of a guardian for support of a ward.   Affirmed.

*F. S. Blattner* and *U. E. Harmon,* for appellant.

*W. R. Flaskett* and *J. H. McMenamin,* for respondent.

MOUNT, J.—The question in this case is whether the surety on the guardian's bond may offset the keep of the ward by the guardian against the liability upon the bond, where there is no evidence that the guardian intended to charge such keep against the estate of the ward.   The question arises upon the following facts, which are stipulated in the case:   That A. R. Mackall, father of Murray Mackall, died in July, 1898, and

[1]Reported in 111 Pac. 884.

G. Y. Travis was appointed guardian of Murray Mackall and his sister Roberta Mackall, in the state of Ohio; that on the 20th day of May, 1902, Rosa K. Mackall was appointed guardian of Roberta Mackall and Murray Mackall, the minor children, the estate consisting of $3,800 in cash, in the hands of the guardian in the state of Washington; that upon her appointment, a surety bond in the sum of $7,600 was given by her, upon which bond the American Bonding and Trust Company became surety, and upon the 29th day of August, 1904, said guardian filed in said court a report in which she showed that Roberta Mackall had arrived at the age of eighteen years, and had been settled with in full by her said guardian. Said report further states, in paragraph 4 thereof, as follows:

"Your petitioner further reports that the money belonging to Murray Mackall amounting to $1,850 is fully and securely invested by your petitioner as guardian in first-class improved property in the city of East St. Louis, state of Illinois, a security with a present market value of $3,400, from which investment your petitioner is receiving a net annual profit of ten per cent per annum upon the amount so invested;"

that on the 6th day of September, 1904, W. O. Chapman, one of the judges of the superior court of the state of Washington in and for the county of Pierce, entered an order approving said report, which among other things provides as follows:

"And it further appearing to the court that all of the acts of said guardian in the management of her trust herein have been regular and in accordance with law, and the court being fully satisfied in the premises: Therefore it is by the court ordered, that all of the acts and transactions of the guardian herein be, and the same are hereby, approved and ratified;"

that no further report has been filed in this cause by said guardian Rosa K. Mackall, and during the month of September, 1906, said Rosa K. Mackall left the state of Washington, and departed for parts unknown; that the real property in East St. Louis referred to in the last report of said guardian was described as follows, which said property was purchased

by Rosa K. Mackall on the 8th day of July, 1904: "The southeast 30 feet of lot numbered 3, and the northwest 30 feet of lot numbered 3, of Lincoln Place Annex;" that the purchase price of said property was $3,400, part of which was paid in cash and security given for the balance, and that the deed for said property was taken in the name of Rosa K. Mackall, trustee; that on August 3, 1907, without an order of court, said guardian Rosa K. Mackall sold said real property at a loss of $500, the net price realized being $2,900; that the proceeds of said sale of said real property were never paid to said minor Murray Mackall or to his present guardian, except the sum of $314, which was sent to the clerk of this court by the agents of the said Rosa K. Mackall, and which said sum was receipted for by the present guardian on the — day of February, 1908, and no other funds or assets have been turned over to the present guardian by the said Rosa K. Mackall, the former guardian; that on the 23d day of November, 1908, the said Rosa K. Mackall, after notice given in the manner provided by law, and for proper cause, was removed as guardian of Murray Mackall, and thereupon the present guardian W. E. Lowrie, petitioner herein, was duly appointed guardian as aforesaid, and is now the duly qualified and acting guardian of the person and estate of Murray Mackall; that on the 26th day of January, 1910, the present guardian petitioned the court for a settlement by the court of the account of Rosa K. Mackall, former guardian, and for a decree settling said trust, and that a citation was issued, and due and legal service thereof was made in the manner provided by law, and the said Rosa K. Mackall was directed to appear and show cause, if any she had, upon the 14th day of April, 1910, why said account should not be settled by the court at said time; that notice of the time and place of hearing was also served upon the American Bonding and Trust Company, as bondsman for the said Rosa K. Mackall, and that the said bonding company as surety appeared and filed its answer;

42—60 WASH.

that on the day fixed for the appearance of the said Rosa K. Mackall, as aforesaid, she failed to appear, and her default was entered by the court, and the court thereupon proceeded to the hearing of evidence in the settlement of the account, which hearing has been continued from time to time until the 23d day of May, 1910; that the former guardian G. Y. Travis contributed the sum of $80 and no more to the support of Murray Mackall, and that the said Rosa K. Mackall maintained and supported the said minor from the death of his father, July, 1898, until September, 1906, and the entire expense was borne by her, except the said sum of $80 paid by the former guardian Travis and the sum of $280 contributed by the minor himself; that a reasonable amount to be allowed to the said Rosa K. Mackall for such time as the court shall allow her for the expense of maintenance and support is the sum of $20 per month.

It is claimed by the petitioner that no allowance should be made for maintenance and support of the minor prior to August 29, 1904, while it is claimed by the surety that she should be allowed for the entire period from death of the father up to September, 1906, subject to the credits hereinbefore stated; and it is agreed that this may be considered by the court as evidence offered by the surety and excepted to by the petitioner, and that the decisions of the court may be reviewed on appeal by either party as to the period for which the allowance should be made; that it appears from the evidence that the said Rosa K. Mackall had lost by endorsement for her brother in 1903 the sum she received from her husband's estate, and that it does not appear that she had any other property or estate; that no attorney's fees or fees to the guardian Rosa K. Mackall have been paid.

The court below allowed an offset for the keep of the ward after the date of the report of the guardian at $20 per month, amounting to the sum of $500, but refused to allow for such keep prior to the date of the report, for the reason that the report made no claim for such keep, and was therefore con-

strued as a waiver thereof. We think the lower court was right in this ruling. The just rule seems to be that a mother has the right to support her minor child voluntarily from her personal means, and having done so she cannot be compelled in the interests of creditors to charge the estate of her child with such support which she intended to give gratuitously. Woerner, American Law, page 163, § 49; Schouler, Domestic Relations, page 349, § 239.

In *Hanford v. Prouty*, 133 Ill. 339, 24 N. E. 565, the court said:

"But it is urged that, as they received from her their maintenance and education during their minority, they should be charged with moneys thus expended in their behalf. . . . but their mother chose, as she had an undoubted right to do, and as perhaps was her legal duty, to maintain them at her own expense, without charging the cost of doing so to their separate estates, and there is no rule which would now permit, and certainly none which would require her, to charge them with such expenditures, in rendering an account of her trusteeship, . . . since it is clearly *proper* for her, if she sees fit to do so, to voluntarily take it upon herself, and having done so, she cannot be compelled, even in the interest of creditors, to charge her children with the expense of that which she has thus elected to do for them gratuitously."

In *Hutson v. Jensen*, 110 Wis. 26, 85 N. W. 689, it was said:

"But it is contended by the appellants that credit should be given for support furnished these minor children by their mother and guardian during the year and a half of her life after her husband's death, . . . The propriety of the allowance to a widowed mother, whether she be or be not guardian, for reasonable expenses incurred by her in the support of her minor children, out of their estate, need not be impugned or questioned. She has the unquestioned right, if she chooses, to support those children voluntarily and out of her own means; and, if she so elects, it lies not in the mouth of any one else to complain."

It is no doubt true, as contended by the appellant, that the surety upon the guardian's bond is entitled to make the

same defense which the principal would be entitled to make, and the presumption would be, in the absence of any evidence upon the question, that the guardian intended to charge for the support of the minor where it appeared that the mother had no estate of her own. But we think the fact that the mother filed a report in August, 1904, and made no charge for such support, is sufficient to overcome the presumption and to show an intention, up to that time at least, to make no such charge. The court allowed $20 per month after that time.

We are of the opinion that the judgment is right, and it is therefore affirmed.

RUDKIN, C. J., PARKER, GOSE, and FULLERTON, JJ., concur.