## DONNELL et al. v. DANSBY et al.

No. 5892.   Opinion Filed July 11, 1916.

(159 Pac. 317.)

1.   **ACTION—Joinder of Causes—Interest Involved.** A joint action may be maintained on a guardian's bond by or on behalf of two wards for an accounting and settlement. where they have a joint interest in the fund or property for which the guardian has failed to account.

2.   **GUARDIAN AND WARD—Accounting After the Death of Guardian—Right of Action.** Where a guardian dies without an accounting and settlement of his affairs as guardian having been made in the county court, his former wards may maintain an action in the superior or district court against his personal representatives and the sureties on his bond as guardian for such accounting and settlement.

3.   **SAME.** In such action, the court has jurisdiction to state the account of the deceased guardian with his wards and may hear evidence, and allow defendants any credits to which the deceased was lawfully entitled, and may determine the balance due, if any, by said guardian and render judgment against the sureties therefor.

4.    **SAME.** It is not necessary that a claim for a fund wrongfully misappropriated by a guardian be presented to the administrator of such guardian before an action for the recovery thereof can be maintained.

5.    **SAME—Estoppel to Deny Liability.** The surety upon a guardian's sale bond, where property has been sold by such guardian and the proceeds squandered, will not be permitted in an action on the bond to deny the validity of the guardian's appointment or of the proceedings resulting in the sale. nor to deny that he received the proceeds of said sale in his fiduciary capacity.

6.    **SAME.—Action—Evidence.** Evidence **held** sufficient to show execution of the bond sued on by defendant surety company.

7.    **GUARDIAN AND WARD—Administration of Estate—Support and Education of Wards.** A father who was appointed guardian of his minor children is entitled to their custody. services, and earnings, and is charged with the duty of supporting and educating them in a manner suitable to their circumstances; and, when he cannot reasonably afford to so support and educate them, and they possess property the income of which will do so, he may, under the direction of the county court, apply such income to the support and education of such minor children.

8.    **SAME—Liabilities on Bonds—Credits.** Where a father who had been appointed guardian of his minor children made no charge against them for moneys expended in their behalf, and obtained no authority of the county court to expend moneys belonging to them, no credits can be allowed therefor after his death in an action against the sureties upon his bond.

(Syllabus by the Court.)

*Error from Superior Court, Pittsburg County;*
*W. C. Liedtke, Judge.*

Action by Dorano Dansby and another against W. P. Donnell, as administrator of the estate of Sam Lewis, deceased, and another. Judgment for plaintiffs, and defendants bring error. Affirmed.

*J. E. Whitehead,* for plaintiffs in error.

*Wm. S. Rogers,* for defendants in error.

HARDY, J.   This action was commenced against W. P. Donnell, administrator, and the Southern Surety Com-

pany as surety upon the bond of Sam Lewis, deceased, former guardian of defendants in error, to recover the sum of $750 alleged to be due from said guardian as the proceeds of the sale of certain lands in which plaintiffs owned a one-half interest. The parties will be referred to as they appeared in the trial court. Separate demurrers to the petition were filed by defendants, which were overruled, and after issue joined trial was had to the court, at the conclusion of which the court directed a verdict for plaintiffs in the sum of $500, the full penalty of the bond.

The first ground of reversal urged is that there was a misjoinder of parties plaintiff and causes of action, because, it is said, there was no privity of interest between plaintiffs and each had a separate and independent cause of action. Plaintiffs were the joint owners of the fund received from the sale of land owned jointly by them. Their father, by the same order, had been appointed guardian of both in one proceeding, had sold the land in that proceeding, and the bond sued on was given as a sale bond therein by order of the court, as a condition precedent to the making of such sale. Section 4690, Rev. Laws 1910, is as follows:

"All parties having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided in this article."

Section 4692 is as follows:

"Of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants. * * *"

In *Burkett et al. v. Lehmen-Higginson Gro. Co.*, 8 Okla. 84, 56 Pac. 856, the plaintiffs, who were sureties

upon the official bond of a sheriff, had paid a certain judgment rendered against him for the wrongful seizure of certain property, under a writ of attachment sued out by defendants, and had sued to recover the amount paid. One of the contentions was that plaintiffs were not entitled to jointly maintain the action. The trial court held this view and sustained a demurrer to the petition, which action was reversed by the Supreme Court. The first paragraph of the syllabus in that case is as follows:

"In all actions, those between whom there is a unity of legal interest must be joined as plaintiffs. Persons in whose favor an obligation exists must all join in an action thereon against the obligor, unless the interest of each of the parties to be benefited is specially stated in the contract, or is determined by the character of the obligation."

In *M. & P. Bank v. Horton et al.*, 27 Okla. 689, 117 Pac. 201, it was held that two joint makers of a note to a national bank who had separately, but from a joint fund, paid usurious interest on the note might jointly maintain an action to recover the penalty provided by section 5198, U. S. Rev. Stats. (U. S. Comp. St. 1913, sec. 9759). There was no misjoinder of parties or causes of action.

Neither does the fact that the guardian's account had not been settled by the county court defeat the plaintiffs' right of action. This court held in *Pennington et al. v. Newman*, 36 Okla. 594, 129 Pac. 693, that an action would not lie against an administrator nor against the sureties on his bond for a breach of the bond until there had been an accounting and settlement in the county court and a decree rendered therein, showing a balance due or a breach of some other condition of the bond, and a failure upon the part of the administrator to comply with the decree entered on the settlement or accounting. In that

case, the administrator was living and was within the jurisdiction of the court and within reach of its process, while here the guardian has departed this life prior to any accounting or settlement being had. The question of whether an accounting or settlement must first be had where the guardian has died, before an action will lie on the bond, has been decided differently by the courts of the various states. The rule in California is that such is not necessary. It is there held that the executors of a deceased guardian have no authority to present an account of the testator as such guardian to the probate court, nor to institute proceeding for the settlement of such account in said court; nor has the probate court any authority to exericse jurisdiction over such a proceeding. A settlement of this nature can only be obtained by a proceeding in a court of equity against the executors of the deceased guardian and other necessary parties. See *In re Allgier et al.*, 65 Cal. 228, 3 Pac. 849; *Reither v. Murdock*, 135 Cal. 197, 67 Pac. 784; *Zurfluh v. Smigh*, 135 Cal. 644, 67 Pac. 1089; Woerner's Am. L. Guardianship, sec. 46.

The same rule also prevails in the State of Kansas. In *Mitchell v. Kelly*, 82 Kan. 1, 107 Pac. 782, 136 Am. St. Rep. 97, the right of action upon the bond of a deceased guardian, without an accounting and settlement having been had in the court having jurisdiction of such proceeding, was upheld. It was said by the court:

"The district court possesses both law and equity powers which may be exercised in the same proceeding. It has general jurisdiction to investigate accounts and to ascertain and declare balances due, and it possesses the common-law powers exercised by chancery courts to settle guardians' accounts. Its methods and rules of procedure are as well calculated to attain just results as are those of the probate court. A finding of a balance due from

the defunct guardian and of facts making the equivalent of a default must precede a judgment holding the surety liable. * * * The guardian is a managing agent for his ward, nobody is interested in his conduct except the ward, and his duty is primarily to account to the ward, rather than to the court. * * * The ward, on reaching his majority, may settle with the guardian as he pleases. When the guardian dies, the trust does not pass to his executor or administrator. His personal representative stands toward the ward as any third person having money or property of the ward in his possession."

The authorities supporting both views of this question are cited in 21 Cyc. 240.

The amount which came into the hands of the guardian is easily ascertainable, and the superior court had jurisdiction of this cause and the power to investigate and determine the balance due, if any, upon the deceased guardian's bond, and in doing so might hear evidence as to the state of his accounts with his wards, and, in order to render judgment for the balance found to be justly due, might allow the defendants to show any credit to which the deceased guardian was lawfully entitled. See Woerner's Am. L. Guardianship, sec. 46.

While in the decisions in California it is said that a proceeding of this nature must be brought in a court of equity, this rule would not affect the jurisdiction of the superior court; for by statute the distinction between actions at law and equity are abolished and in their place there exists but one form of action called a civil action (section 4650, Rev. Laws 1910), in which may be administered all the relief that was formerly administered in an equitable action.

Section 6346, Rev. Laws 1910, requires that all claims must first be presented to the executor or administrator be-

fore an action can be maintained thereon; and it is claimed that by reason thereof plaintiffs' cause of action is barred. Plaintiffs were not creditors of deceased, but are seeking an accounting of a trust fund held by him, which he had wrongfully misappropriated. We are justified in saying this because it is shown that none of this fund came into the hands of his administrator. There was no contractual relation existing between them, but the relation was one created and governed by law. In *Am. Trust Co. et al. v. Chitty et al.*, 36 Okla. 479, 129 Pac. 51, it was held that claims arising in tort or other wrongful acts of the deceased need not be presented to the executor or administrator before an action will lie thereon. A requirement that the claim here involved be presented to the administrator necessarily carries with it the proposition that the administrator has the power to allow or reject such claim, and that the county court in the administration proceedings would be authorized to state the account of the guardian with his wards, allowing or disallowing claims of the wards or the administrator in reference thereto, and in determining the balance due, which, we have seen, it cannot do. While the property of the ward may come into the hands of the administrator upon the death of the guardian, the trust does not descend to him, but is a personal trust reposed in the guardian; and the administrator merely takes possession of the property of the ward coming into his hands, for the purpose of holding and preserving it, until the persons entitled thereto can obtain a settlement of the guardianship affairs in the proper forum, when the rights of all parties may be definitely determined. See *Lathrop v. Bampton*, 31 Cal. 17, 89 Am. Dec. 141; *Chaquette v. Ortet*, 60 Cal. 600; *Theller v. Such*, 57 Cal. 447.

When the guardian petitioned the county court for an order permitting him to sell the lands of his wards, and obtained an order directing a sale thereof and requiring him to give a bond before making such sale, and the Southern Surety Company became surety thereon and said lands were thereafter sold and the guardian received the proceeds thereof, for which he failed to account, the surety will not be permitted to question the validity of his appointment or the proceedings resulting in the sale, nor to deny that he received the moneys arising therefrom in his fiduciary capacity, when suit is brought upon the bond to recover the amount of the guardian's default. *Boudinot v. Locust et al.,* 55 Okla. 662, 151 Pac. 579.

J. E. Whitehead, the attorney for the Southern Surety Company, testified that he had represented the surety company in the trial of a few cases, and that F. D. Ungles, as agent and attorney in fact for the Southern Surety Company, had signed a number of bonds in probate matters in which he was interested; and, while he was not an expert on handwriting, he would guess the signature to the bond was in the handwriting of Ungles. R. W. Higgins, who was attorney for defendant Donnell, testified that he served as county judge of Pittsburg county for about three years, and that the Southern Surety Company had qualified as surety on a number of guardian's and other probate bonds which were executed by F. D. Ungles as agent and attorney in fact, and that he had seen the signature of said Ungles to said bonds quite often, and that in his judgment the signature to the bond in question was in the handwriting of Ungles. When it was shown that Ungles, as agent for the Southern Surety Company, had, as expressed, "quite often" executed bonds in the name of the surety company which were filed and ap-

proved in the court, and that in the opinion of two persons who were familiar with his handwriting the bond was executed by him, this was sufficient, in the absence of evidence to the contrary, to warrant a finding that he had authority to execute said bond and that same was in fact executed by him.

Defendants offered to show that deceased had expended various items for plaintiffs in the nature of transportation from Mississippi to the Indian Territory, and for buying improvements to obtain a suitable allotment, and for expense in going to the land office, and also in defending Jim Lewis upon a charge of larceny. Deceased was the father of plaintiffs, and the lands sold were the interest possessed by them in the allotment of their mother, who had died. In addition, they each owned an allotment equal to 320 acres of the average allottable lands of the Choctaws and Chickasaws. At the time of the trial Jim Lewis was 22 years of age, and while the age of Dorona Dansby is not apparent, it does appear that she had been married. The father was entitled to the custody, services, and earnings of plaintiffs during their minority (section 4368, Rev. Laws 1910), and was charged by law with the duty to support and educate them in a manner suitable to their circumstances (section 4367); and, if he could not reasonably afford to maintain and educate them in keeping therewith, he might, under the direction of the county court, defray the expense of such maintenance and education from the income of their individual property (section 6535), but the authority given by this section does not authorize the payment thereof from the corpus of the estate, in other words, from the capital. Being entitled to the services and earnings of the plaintiffs, and the duty to educate and maintain them

being imposed upon him by law, and not having made any claim for such allowances in his lifetime, the sureties in this action cannot make such claim for him. To have entitled him to credit, the expenditures must have been made under the direction of the county court, and no claim is made that such authority was obtained. In Woerner's Am. L. Guardianship, sec. 104, the author says:

"The law regulating the duties and powers of guardians in respect of the support and education of their wards is discussed in a former chapter. It appears, from what is stated there, that where the father is able to maintain and educate his child out of his own means, there will be no allowance to the guardian for such purpose; hence, when a father has property of his infant child in his possession, and has not during his lifetime applied to the court to appropriate the child's property for its education or support, nor made any charges to the child, his estate will be allowed nothing for such support without the clearest proof that justice requires it. To justify the allowance of credits in the guardian's settlement for expenditures in the maintenance of a ward who has parents living, there must be a preceding order of the court having jurisdiction allowing the expenditure." *Knox v. Kearns et al.*, 73 Iowa, 286, 34 N. W. 861.

The fact that the guardian had the custody and was entitled to the earnings and services of the minors, and that they had other property which is not here involved, and that no account was ever presented to the county court asking an allowance for the items now urged, justifies the conclusion that he intended to make no such charge; and, where no such intention existed upon his part, the surety company cannot claim said items as an offset in an action upon the bond, even if such items could be allowed without an order of the county court. *State v.*

*Miller,* 44 Mo. App. 118; *In re MacKall,* 60 Wash. 655, 111 Pac. 884.

Some of the items claimed are not within the contemplation of the law authorizing the property of the wards to be expended under the direction of the county court for their education and maintenance. When the father moved from Mississippi, it was his duty to remove his family, including his minor children, with him; and it was a natural thing for him to seek suitable lands for his children to select in allotment and to see that proper filings were made. One of the items sought to be proven is the payment by the father for the marriage license of his daughter and the wedding clothes in which she was married. It appears that the father never thought of making a charge for such matters, and that the attempt to claim credit therefor is now made in an effort to escape liability upon the bond. If the surety may defeat its liability by these means, there is scarcely a bond in any probate proceeding involving the lands of Indian minors that may not be satisfied and discharged by offsetting against liability thereon expenses of the character here urged, even though not allowed by the county court. There was no error in excluding the testimony offered.

No error appearing in the record, the judgment is affirmed.

All the Justices concur.