**NEAL v. HODGES.**

**No. 1004.**

District Court, N. D. Oklahoma.

Oct. 1, 1935.

Lashley & Rambo, of Tulsa, Okl., for plaintiff.

Biddison, Campbell & Biddison, of Tulsa, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

This is a suit by a former ward against a surety on his guardian's bond, for accounting and to recover for defalcation of the guardian, now deceased.

The facts are not intricate. On November 15, 1924, Charles W. Neal was appointed by the county court of Tulsa county, this state, guardian of the plaintiff, then a minor fourteen years of age. The petition for such appointment, filed three days prior by the said Charles W. Neal, recited that the latter was father of said minor; that the minor was a nonresident of the state and had estate in Tulsa county, described as a real estate bond in the sum of $5,000, maturing November 1, 1925, and covering a part of lot 3, block 81, in the city of Tulsa. By its order of appointment, the court, in the usual manner of compliance with the statutory requirements, directed that letters of guardianship issue to such guardian upon his taking oath as guardian, and executing a bond in the amount of $5,000 to the ward for the faithful discharge of his duties, with sureties to be approved by the court. Thereafter, on December 1, 1924, Charles W. Neal took oath as guardian, and presented the required bond, signed by himself as principal, and the defendant and Lee E. Frye as sureties. Whereupon, the court approved the bond and duly issued the letters of guardianship. No inventory was filed, and the records of the court show no further proceedings in this probate cause, which was numbered and styled "Probate Cause No. 5251, In the Matter of the Guardianship of Wallace Neal, a Minor." No accounting was ever made by the guardian, who died insolvent in January, 1932. The surety, Frye, also died some time prior to this suit, leaving no discoverable estate.

On the part of plaintiff, the evidence disclosed the execution of a real estate mortgage bond by J. O. Stewart and wife, and W. H. Kekilty and wife, to the Exchange Trust Company of Tulsa, under date of October 17, 1922, due November 1, 1925, in the amount of $5,000, and a first mortgage executed between the same parties to secure this bond, covering the identical property described as the property covered by the bond named in the petition of Charles W. Neal for his appointment as guardian of plaintiff. It was also shown there was no other bond or mortgage affecting said property during the times above mentioned. The Exchange Trust Company sold to Charles W. Neal, and its proper officers indorsed the bond to Neal, but no assignment of the mortgage, if any made, was placed of record. Some time thereafter, and on April 24, 1924, the trust company, acting under the direction and at the request of Neal, executed an assignment of the mortgage and the indebtedness it secured, to plaintiff. There was no indorsement on the bond itself showing assignment to the plaintiff. At its maturity the bond was paid by the obligors to the trust company, which on November 2, 1925, through Steiner, its assistant secretary, paid the proceeds thereof, in the sum of $5,200, by check of the trust company, to Charles W. Neal. Steiner testified that when the check was issued to Neal he overlooked the fact of the execution of the assignment previously made by the trust company to Wallace Neal and that this oversight was the reason that the check was made payable to

the individual order of Charles W. Neal. It was shown that Neal received the proceeds of said check in money at the Exchange National Bank of Tulsa.

It is for these funds, for which Charles W. Neal made no account as guardian, plaintiff sues defendant. Plaintiff's mother, the first wife of Charles W. Neal, testified that the latter visited her at her home in Kansas City, Mo., where she was residing with plaintiff, in the summer of 1925, and after she and Charles W. Neal had been divorced, and on that occasion told her he had created a trust in favor of plaintiff and mentioned in connection therewith a mortgage or bond, and further stated he had himself appointed guardian of the trust property for plaintiff, and inquired if such guardianship was satisfactory to her. Plaintiff testified he visited with his father in Tulsa every summer, with the possible exception of the summer of 1930, until his father's death, and on these visits his father told him he had made provision for him so he would have something with which to start business when he became of age. The will of Charles W. Neal bequeathed to plaintiff, his only son, the sum of $5. Plaintiff further testified that he received nothing from the estate of his father and that neither his father nor the sureties on the bond had ever accounted to him for the proceeds of the mortgage bond.

The only witnesses on behalf of defendant were himself and an attorney who had represented him for a great many years. This attorney acted for Charles W. Neal in filing the petition upon which Neal was appointed guardian of plaintiff as aforesaid, and testified that after the same was filed, Charles W. Neal, in the presence of Steiner, assistant secretary of the trust company, told him the guardianship proceedings were had for the purpose of preventing Neal's wife, the mother of plaintiff, from collecting back payments of alimony out of this bond, and he had made this disposition of the bond in order that he might get the proceeds thereof himself. The defendant testified to knowing nothing regarding this arrangement, though that he and Charles W. Neal were good friends and so remained up to the death of the latter.

■ To defeat the plaintiff's suit, defendant relies on several defenses. A defect of parties is urged upon the theory that the heirs and personal representatives of both Charles W. Neal and Lee E. Frye are necessary and indispensable parties defendant. Coupled with this is also the suggestion that plaintiff should have first presented his claim for an accounting to the executor of Charles W. Neal, and had a settlement of the guardian's account by the county court of Tulsa county in the guardianship proceedings, and not having done so cannot maintain this suit. I think these positions have little merit since both Neal and Frye died prior to the commencement of the suit, and the evidence developed that the administration of the estate of Charles W. Neal revealed its insolvency, and also there was no discoverable estate left by Frye upon his death. Donnell v. Dansby, 58 Okl. 165, 159 P. 317; Asher v. Stull, 61 Okl. 320, 161 P. 808; Morey v. Christian, 69 Okl. 63, 169 P. 887; Title Guaranty & Surety Co. v. Burton, 67 Okl. 320, 170 P. 1170; Equitable Surety Co. v. Sapp, 77 Okl. 221, 187 P. 917; Southern Surety Co. v. Jones, 90 Okl. 285, 214 P. 727.

■ Nor is there any substantial merit to the defense of laches. There is no barring statute of limitations. True, when Charles W. Neal converted to his use the proceeds of the bond on November 2, 1925, a cause of action then accrued in favor of plaintiff. But, at that time plaintiff was under the disability of minority, and so remained until October 4, 1931. Under the provisions of section 1439, O.S.1931, plaintiff had three years from the discharge or removal of the guardian within which to assert this cause of action, and the earliest date at which this period began to run, under any conceivable construction, was the date of plaintiff's majority, and suit was instituted well within three years from such date. Moreover, when plaintiff attained majority he had the right to require of his guardian and sureties a general accounting of the management of the guardianship estate. And to such cause of action the Oklahoma Supreme Court has held that the fifth subdivision of section 101, O.S.1931, with a five-year limitation, applies, and further that the statute only begins to run at the date of the ward's majority. Southern Surety Co. v. Beal, 134 Okl. 118, 272 P. 375. Under any consideration with reference to the Oklahoma statutes of limitations, the suit was timely commenced. Putting aside the question of statutory limitation, which as above stated cannot be of aid to the defendant, are there any other circumstances in the case

which would warrant a court of equity in barring plaintiff from recovery because of laches? Plaintiff testified he did not learn of the guardianship until the spring of 1933. He acted without unusual delay after that time. Besides, it is well settled that mere delay alone in bringing a suit is insufficient to constitute laches; the delay must result in some prejudice to the party asserting laches. Standard Oil Co. of Colorado v. Standard Oil Co. (C.C.A. 10) 72 F.(2d) 524. The defendant complains that plaintiff sought no accounting until after the estate of Charles W. Neal had been fully administered, and after the death and dissipation of the estate of his cosurety Frye. Such complaint is not availing to defendant. As a surety on the bond of Charles W. Neal, defendant had obligated himself to see that a proper inventory of the estate was filed by the guardian; that the guardian would file proper and timely accounts, and otherwise faithfully discharge his duty as guardian. Section 1436, O.S.1931. Equally with the plaintiff, the defendant had the right to compel these things on the part of Charles W. Neal. He had personal knowledge of the existence of the guardianship and for a long period thereafter was in close contact with Neal, and part of the time Neal's business partner. He resided in Tulsa, where Neal also resided. He was in a better position to enforce the guardian's proper discharge of his guardianship trust than was plaintiff. There was nothing in the conduct of plaintiff to mislead defendant, or cause him on his own behalf, to delay proceedings to require the guardian to account. Under these conditions, it would be inequitable to absolve the defendant from the effect of a situation which he, with proper attention, might have changed, and to shift his own responsibility to plaintiff. If prejudice has resulted to defendant, it may be said to be a creation of his own—the consequences of which he must abide. The following decisions make this rather clear: Gronna v. Goldammer, 26 N.D. 122, 143 N.W. 394, Ann.Cas.1916A, 165; Trumpler v. Cotton, 109 Cal. 250, 41 P. 1033; Cook v. Ceas, 147 Cal. 614, 82 P. 370.

In view of 28 U.S.C.A. § 397, there is no point in the defense raised that the transfer to the equity side of the court of this suit, originally brought as an action at law, was unauthorized.

The main defense offered, and the only one presenting a legal problem of any degree of perplexity, is that the real estate bond never at any time became the property of plaintiff, but was at all times that of Charles W. Neal, and when the latter collected the proceeds from the Exchange Trust Company, he was simply collecting his own money. Defendant strenuously urges that there was no executed gift of the bond by Charles W. Neal to his son, the plaintiff, nor did Charles W. Neal make the bond the subject of any valid trust of which the plaintiff was beneficiary, as asserted by plaintiff. This is not an easy question, but if it were necessary to decide it, I am inclined to think the authorities bear out the position taken by plaintiff that a valid trust was created. Neal repeatedly informed his son that he had created a trust for him as he would have a start in business when he became of age. Likewise Neal had so informed his former wife, mentioning a bond as the subject of the trust, and further stating to her that he had had himself appointed guardian of such property of the son. Whatever disparagement this testimony may suffer because of the interest of the witnesses who gave it, it is still entitled to probative weight, and has a ring of sincerity when considered in connection with the other circumstances in evidence. There is no dispute that Neal directed the Exchange Trust Company to assign the mortgage which secured this bond, to plaintiff, nor as to this having been done. Some six months later, he affirmed, in his petition for appointment of himself as guardian, that the bond was the property of plaintiff. Section 1419, O.S.1931, in force at the time Charles W. Neal procured his appointment as guardian of plaintiff, requires, as a jurisdictional prerequisite to the appointment of a guardian for a minor who resides outside the state of Oklahoma, that such minor have estate within the county where the appointment is made. It is, therefore, manifest that the county court of Tulsa county necessarily must have found that Wallace Neal was, at the time of the appointment of Charles W. Neal as guardian, the owner of the bond in question, and the presumption is that Charles W. Neal, proponent of himself as such guardian, offered evidence to such effect satisfying to the court.

It would seem, therefore, not difficult to reach the conclusion that Charles W.

Neal, by his declarations, had made the bond the subject of a trust, with the plaintiff as beneficiary, and Charles W. Neal the trustee. Pomeroy Equity Jurisprudence (3d Ed.) vol. 3, § 997; Bogert on Trusts, pp. 76, 77; Martin v. Funk, 75 N.Y. 134, 31 Am.Rep. 446; Janes v. Falk, 50 N.J. Eq. 468, 26 A. 138, 35 Am.St.Rep. 783; In re Smith's Estate, 144 Pa. 428, 22 A. 916, 27 Am.St.Rep. 641; Connecticut River Savings Bank v. Albee's Estate, 64 Vt. 571, 25 A. 487, 33 Am.St.Rep. 944; Fox v. Fox, 250 Ill. 384, 95 N.E. 498; O'Neil v. Greenwood, 106 Mich. 572, 64 N.W. 511; Sieling v. Sieling, 151 Md. 536, 135 A. 376.

However, it is not necessary to hold that such a trust was created. Decisive authorities are submitted to the effect that both Charles W. Neal and the sureties on his bond as guardian are estopped to deny that plaintiff owned the real estate bond described in the petition of the said Neal for his appointment as guardian of the estate of plaintiff; and also estopped to deny that Neal received the proceeds of this bond in his capacity as guardian. This court is bound by the law as announced by the Supreme Court of Oklahoma on this question. Mutual Life Insurance Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; Newberry v. Wilkinson (C.C.A.) 199 F. 673. Among the Oklahoma cases supporting the doctrine that such an estoppel exists, are: Anderson v. Anderson, 45 Okl. 653, 146 P. 709; Boudinot v. Locust, 55 Okl. 662, 151 P. 579, 155 P. 698; Donnell v. Dansby, supra; Southwestern Ins. Co. v. Richard, 62 Okl. 122, 162 P. 468. Also see Newberry v. Wilkinson, supra; Bruce v. Globe Indemnity Co. (D.C.) 9 F.Supp. 761; State v. Weaver, 92 Mo. 673, 4 S.W. 697. Following the Oklahoma cases, I hold that defendant is here estopped to deny that the real estate bond was the property of plaintiff. Accordingly, the plaintiff is entitled to judgment against defendant in the sum of $5,000, the penal amount of the guardianship bond.

Plaintiff contends he is entitled to interest at the rate of 6 per cent., compounded annually, from November 2, 1925, on the amount of the judgment. While under some of the decisions he cites such a holding might be warranted, still with a court of equity interest is a matter of discretion, and under the circumstances of this case I think it would be inequitable to fasten such added liability on the defendant. The imposition of interest is on the theory that the guardian is required to invest the funds in the estate of his ward, and not having done so, consequently is penalized with interest. The guardian would have had the right, under the laws of Oklahoma and with authority of the probate court, to make an investment of these funds for the ward, in real estate mortgage loans and various other securities. It is a matter of common knowledge that during the past few years many careful investments have greatly depreciated in value, and had these funds been invested under an order of court, and the estate depreciated, of course, the guardian could not have been held liable for such depreciation. Taking into consideration the severity of the depression extending over the entire country, it is not likely, had such funds been invested, that the minor would have profited thereby, and the chances for a considerable loss of his estate are strong. Hence, I think it would be inequitable to charge the defendant with interest as plaintiff asks. On the other hand, when the plaintiff attained majority he was clearly entitled to the proceeds of his estate, and for that reason I think he is entitled to interest at the rate of 6 per cent. per annum from the date of his majority, October 4, 1931, but without any compounding.

The judgment, therefore, will be that the plaintiff recover from defendant the sum of $5,000, with interest thereon at the rate of 6 per cent. per annum from October 4, 1931. A decree may be drawn in accordance with this opinion.