**HUDSON v. JONES (two cases).**

Nos. 5997, 5998.

District Court, W. D. Oklahoma.

March 31, 1938.

Hayes, Richardson, Shartel, Gilliland & Jordan and C. D. Ellison, all of Oklahoma City, Okl., for plaintiffs.

Wm. C. Lewis, U. S. Dist. Atty., and Wade H. Loofbourrow, Asst. U. S. Dist. Atty., both of Oklahoma City, Okl., and Jerome P. Carr, Sp. Asst. to Atty. Gen. (Jas. W. Morris, Asst. to Atty. Gen., and Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on the brief), for defendant.

VAUGHT, District Judge.

These suits seek the recovery of alleged overpayments of individual federal income taxes for the calendar year 1932. The suits were consolidated for trial for the reason they involved the same questions of law. The substantial facts are stipulated and oral testimony was introduced, supplementary thereto.

In cause No. 5997 the plaintiff seeks to recover the sum of $3,848.86 with lawful interest, which represents the amount of assessment of additional taxes for the year 1932 paid by the plaintiff on July 12, 1935.

In cause No. 5998 the plaintiff seeks to recover $1,937.87 with interest, which represents the amount of assessment of additional taxes for the year 1932 paid by the plaintiff on July 12, 1935.

On May 30, 1932, Dorothy H. Hudson (Mrs. H. R. Hudson), wife of the plaintiff in cause No. 5997, executed three certain instruments in writing, each entitled "Irrevocable Trust Agreement." Each of said trust agreements designated one of the children of H. R. Hudson and Dorothy H. Hudson as beneficiary. The trustor set aside certain described property to be held in trust for the benefit of said children. The trusts designated as trustees of said trusts, H. R. Hudson, Frank Walker, and Dorothy H. Hudson, and provided that, in the event of a vacancy caused by the death or resignation of any of the trustees, said vacancy should be filled by H. R. Hudson and, furthermore, provided that Dorothy H. Hudson and Frank Walker could resign at any time and, in said event, H. R. Hudson should then become the sole trustee.

The trusts provided that the sole management of said trust estates should be in the hands of said trustee or trustees; that the trustee or trustees should have the full power to sell, exchange, reinvest and otherwise handle said property, but that the corpus of the estates, together with the income therefrom, should remain the property of said beneficiaries; that, after deducting the actual expenses of said trust estates, the income therefrom should accumulate from year to year; that 5 per cent. of said principal and accumulated income should be distributed to each of said children upon attaining the age of 21 years, respectively; 15 per cent. thereof should be distributed upon beneficiaries attaining the age of 25 years; 25 per cent.

upon attaining the age of 30 years; and upon attaining the age of 35 years, each of the beneficiaries should receive the remaining amount.

The trust further provided as follows: "It is further provided, however, that notwithstanding anything to the contrary herein contained, the Trustee may, at any time during the continuance of this trust, pay to or expend for the use and benefit of the said (beneficiary) such sums from the income and/or principal thereof as said Trustees shall deem necessary and advisable to provide for the maintenance, education and support of the said (beneficiary), or to defray his expenses arising from sickness, accident or unusual circumstances."

The trust agreements were duly signed by the trustor and the trustees on the 30th of May, 1932, but were not acknowledged until the 16th of March, 1933, and have never been filed of record with the county clerk of Oklahoma county. Upon the execution of said trusts, they were delivered to the trustee.

On May 30, 1932, H. R. Hudson executed three instruments of gift of certain property described therein which became a part of the corpus of said trust estates.

The income involved in this action is income arising from properties which were the subject of the statement of gifts on the part of H. R. Hudson and of the properties contained in the statement of gifts executed by Mrs. H. R. Hudson at or about the same time.

The following provisions of the Revenue Act of 1932 govern the income taxation of trusts during that year, and are applicable in this case:

"§ 161(a) *Application of tax.* The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust including: * * *

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct; * * *

"(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

"(b) *Computation and payment.* The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor)."

"§ 162. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except" [certain authorized deductions not involved here].

"§ 166. Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

"§ 167. (a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * *

"then such part of the income of the trust shall be included in computing the net income of the grantor." 26 U.S.C.A. §§ 161(a) (2, 4), (b), 162, 166, 167(a).

Notwithstanding the transfer of these properties from H. R. Hudson and Mrs. H. R. Hudson to the trust estates, the income therefrom for the year 1932 was taxed by the Commissioner of Internal Revenue as income to H. R. Hudson and Mrs. H. R. Hudson. The taxes so assessed were paid under protest by the respective plaintiffs, as hereinbefore set out, and these suits are filed to recover the sums so paid as taxes assessed against the plaintiffs, on the ground that said income was not the income of the plaintiffs but was the income of the beneficiaries in the respective trusts.

The government resists the claims of the plaintiffs principally upon two grounds. First, that under the laws of Oklahoma, the trusts created by the taxpayers were

invalid in 1932 because they were not acknowledged in that year and because they have never been recorded. Second, particularly with reference to H. R. Hudson, that the creator of the trusts, who has unlimited power to use the corpus and income of the trusts to satisfy a legal and moral obligation, but who does not so use any of the corpus or income during the tax year, is taxable on the income received from the trusts.

On the first proposition, it is admitted that the question of whether or not said trusts are valid trusts must be determined by the laws of Oklahoma.

In Commissioner of Internal Revenue v. Blair, 60 F.2d 340, the Circuit Court of Appeals, Seventh Circuit, held: "Liability of trust income for tax must be determined by law of state wherein beneficiary resided and trust property was located."

And on appeal to the Supreme Court, in Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 332, 81 L.Ed. 465, in the same case, the Supreme Court of the United States said: "The question of the validity of the assignments is a question of local law. The donor was a resident of Illinois and his disposition of the property in that State was subject to its law. By that law the character of the trust, the nature and extent of the interest of the beneficiary, and the power of the beneficiary to assign that interest in whole or in part, are to be determined. The decision of the state court upon these questions is final. Spindle v. Shreve, 111 U.S. 542, 4 S.Ct. 522, 28 L.Ed. 512; Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L.Ed. 819; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Freuler v. Helvering, supra, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634."

As to whether or not the failure to acknowledge or record the instruments, as provided by statute, although duly executed and delivered, invalidates the trust agreements under the laws of Oklahoma, has been definitely decided by the Supreme Court of Oklahoma.

■ In Kimberly v. Cissna, 161 Okl. 17, 16 P.2d 1090, 1091, the Oklahoma Supreme Court said:

"Under this statute, as between the parties, it is not necessary for the trust agreement to be acknowledged or recorded. If, however, it were not properly of record, then the rights of innocent third parties might intervene. * * *

"When all the statutes are considered together, we think the correct interpretation is that, as between the parties, a valid express trust may be created without the necessity of the trust agreement being acknowledged or recorded. * * *

"We hold that, as between the parties, a trust created under section 8461 [section 11807, O.S.1931, 60 Okl.St.Ann. § 135] or under 8465 [section 11820, O.S.1931, 60 Okl.St.Ann, § 171] is valid without being acknowledged or recorded."

In that opinion the court considered sections 8461, 8465, and 8466, sections 11807, 11820 and 11821, O.S.1931, 60 Okl. St.Ann. §§ 135, 171, 172, and its conclusion, as above set out, was reached after a consideration of section 8466, which provides for acknowledgment and recording of said trust instrument.

In the government's brief it is said: "It is true that the Supreme Court of Oklahoma has held that an express trust may be valid as between the parties, though not acknowledged and recorded. Kimberly v. Cissna, 161 Okl. 17, 16 P.2d 1090. So far as our research shows this decision is the only qualification of Section 11821, supra. It is clear, however, that the Kimberly Case does not control here, for the question in this proceeding is not the validity of these trusts as between the parties but their validity as to the Collector of Internal Revenue and the United States Government."

Certainly, the United States government has no interest in the validity of the trust agreements except in so far as it is necessary to determine the ownership of the income for the year 1932. The government cannot seriously contend that it is in the position of "an innocent third party." The question is: Who received the income for 1932? The person receiving said income would be liable for the tax.

■ The government has no right to ignore or even lightly consider the Kimberly Case, for it certainly is controlling, not only upon the government but upon this court.

In Hoeper v. Tax Commission, 284 U. S. 206, 52 S.Ct. 120, 122, 76 L.Ed. 248, the court said: "We have no doubt that, because of the fundamental conceptions which underlie our system, any attempt

by a state to measure the tax on one person's property or income by reference to the property or income of another is contrary to due process of law as guaranteed by the Fourteenth Amendment. That which is not in fact the taxpayer's income cannot be made such by calling it income."

While the government admits that it has made no attempt to show bad faith in these cases, yet there is a strong intimation that the trust agreements were so drawn as to provide an opportunity for the evasion of federal tax, and in defendant's brief it is stated: "If a taxpayer in Mr. Hudson's position wished to act in bad faith, we see nothing to prevent him from tearing up the trust agreements, destroying what books and records he had with the connivance of an auditor; and no one, subsequent to the tax year in which he had paid no individual tax on the trust income, would ever know of the existence of any trusts."

■ The court would scarcely be expected to indulge in mere possibilities or in speculation as to what a taxpayer might do. The right to legitimately acquire and legally possess property is a constitutional right and the fundamental purpose for the acquisition of property is to accord citizens of this nation the absolute right to enjoy the same. Taxation is an incident to the possession of property but it can hardly be said that the acquisition of property is primarily to afford a basis for taxation. What counsel for the defendant has observed, with reference to what might be done in Mr. Hudson's position, might be said to be true of every other taxpayer in the United States. The burden is upon the defendant to establish bad faith, or a fraudulent design. The evidence in this case discloses that Mr. Hudson did not tear up the trust agreements and he did not destroy the books and records; that he has kept accurate records of every penny of income from this property and has credited same to the beneficiary; that neither he nor Mrs. Hudson has received, personally, any portion of the income from said trust estate; and, that it has all been received by the trustee in his trust capacity and has been held by him as trustee, as provided in the trust agreements.

It is provided in the trust, as hereinbefore stated: " * * * the Trustees may, at any time during the continuance of this trust, pay to or expend for the use and benefit of the said (beneficiary) such sums from the income and/or principal thereof as said Trustees shall deem necessary and advisable to provide for the maintenance, education and support of the said (beneficiary) or to defray his expenses arising from sickness, accident or unusual circumstances."

■ In the construction of this provision of the trust, the court is not precluded from taking advantage of his own observation and the observation of people, generally, as to what frequently occurs to large estates. Within the past decade, it has not been unusual to see vast estates disappear. Not through poor judgment but because of conditions which could not be foreseen by the owner, and the disposition and desire to place a portion of one's estate in such a position that his children may be amply provided for are to be commended. There is no greater obligation resting upon a parent than to properly provide care, maintenance, and educational advantages for his children and to make them, upon arriving at their majority, not wholly dependent upon their parent. If Mr. Hudson and Mrs. Hudson should lose their property through poor investments, although made in the exercise of their best judgment, a condition might arise to make it "necessary and advisable" to use a portion of their children's estate in order to provide for their "maintenance, education and support" or "to defray expenses arising from sickness, accident or unusual circumstances." There is nothing, however, in this record to justify the observation that either of the plaintiffs in these cases, either intended to or have evaded their legal, parental obligation to their children, or that any portion of said estate, either principal or income, has been used for such purposes.

In Schweitzer v. Commissioner of Internal Revenue, 7 Cir., 75 F.2d 702, 704, reversed by the Supreme Court in Helvering v. Schweitzer, 296 U.S. 551, 56 S.Ct. 304, 80 L.Ed. 389, the petitioner actually received the income from the trusts in question and a portion thereof was applied by the petitioner to the support, maintenance, and education of minor children, the beneficiaries under the trusts. The trusts were also revocable by the petitioner only with the consent of his wife, who had a contingent interest in the remainder. That case is not persuasive in the case at bar for the reason that the

Hudson trust agreements were irrevocable and the record in this case discloses that no portion of the income from said trust estates was used by the trustee for the support, maintenance and education of his children, the beneficiaries under said trusts.

In the case of Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916, cited in defendant's brief, a very different state of facts existed from that disclosed by the record in this case. In the Corliss Case the instrument creating the trust reserved the power "to modify or alter in any manner, or revoke in whole or in part, this indenture and the trusts then existing, and the estates and interests in property hereby created." The Supreme Court, in that case, said: "The statute referred to [that is the taxing statute] provides that 'when the grantor of a trust has, at any time during the taxable year, * * * the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.'"

Further, in said opinion, the court said: "Still speaking with reference to taxation, if a man disposes of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given by assent or by failure to express dissent. The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not."

There is a distinct difference between a trust agreement legally executed, expressly limiting the powers of the trustee, and a so-called trust agreement which is subject to revision or cancellation at any time the taxpayer so desires in order to effect an advantage to him.

Douglas v. Willcuts, 296 U.S. 1, 56 S. Ct. 59, 63, 80 L.Ed. 3, 101 A.L.R. 391, the case upon which the defendant apparently bases his defense in these actions, involved a divorce action where the husband was under legal obligation to provide for his divorced wife. Simultaneously, with the filing of the suit, he created a trust, the income from which was used to pay alimony to his divorced wife. In other words, the income from this trust was to be used and was used, to pay his personal, legal obligation to his wife. The court held, and properly so, that this was income to him and that he merely used this income to pay what he would otherwise have been required to pay directly as alimony to his divorced wife.

Under the laws of Oklahoma, as construed by the highest court of this state, a trustee, under a trust of the character under consideration, is amenable to a court of equity, and in Hivick v. Urschel, 171 Okl. 17, 40 P.2d 1077, 1078, the Supreme Court of Oklahoma held: "It is contrary to the principles of equity to allow a trustee to profit by a breach of his trust at the expense of his cestui que trust."

In Becker v. St. Louis Trust Company, 296 U.S. 48, 56 S.Ct. 78, 79, 80 L.Ed. 35, the United States Supreme Court said, affirming an opinion from the Eighth Circuit Court of Appeals upholding a trust similar to that involved in these cases: "By the declaration of trust here under review, the legal title, possession, and control of the trust estate passed irrevocably from the grantor as an individual to himself as trustee. The effect is no different than if the trustee had been another person"—citing Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397.

In Shukert v. Allen, 273 U.S. 545, 47 S. Ct. 461, 71 L.Ed. 764, 49 A.L.R. 855, the Supreme Court said: "The transfer was immediate and out and out, leaving no interest remaining in the testator. * * * Although the Circuit Court of Appeals seems to have thought otherwise, the interest of the children respectively was vested as soon as the instrument was executed, even though it might have been divested as to any one of them in favor of his issue if any, or of the surviving beneficiaries, if he died before the termination of the trust. * * * But it seems to us tolerably plain, that when the grantor parts with all his interest in the property to other persons in trust, with no thought of avoiding taxes, the fact that the income vested in the beneficiaries was to be accumulated for them instead of being handed to them to spend, does not make the trust one intended to take effect in possession or enjoyment at or after the grantor's death."

It is apparent from the record that the primary purpose in these trust agreements was not only to set aside an estate

·for the benefit of the children, but was to preserve the accumulations thereto for the benefit of the beneficiaries.

■ As said hereinbefore, a legal duty rests upon a father, under the laws of Oklahoma, to provide for his children, and that provision not only means proper care and maintenance but their education in accordance with the financial ability of the father to provide.

· In Donnell v. Dansby, 58 Okl. 165, 159 P. 317, 319, the Supreme Court of Okla·homa said: "The father was entitled to the custody, services, and earnings of plaintiffs during their minority, * * * and was charged by law with the duty to support and educate them in a manner suitable to their circumstances; * * * and, if he could not reasonably afford to maintain and educate them in keeping therewith, he might, under the direction of the county court, defray the expense of such maintenance and education from the income of their individual property."

And in Re Clark's Guardianship, 104 Okl. 245, 230 P. 891, 893, 43 A.L.R. 595, the court said: "We think the court should look with favor upon the discharge of legal obligations by parents for the support of their minor children out of their own means, so as to conserve the estates of these dependents for their benefit upon arrival at majority."

In Schweitzer v. Commissioner, supra, the Circuit Court of Appeals said: "The Commissioner admits that the petitioner had no power to expend the trust income in any other manner than for the support, maintenance, and education of his children. The theory upon which he seeks to sustain the ruling of the Board is that the petitioner actually received the income of the trusts and expended it in the discharge of his legal obligation to his children."

In Douglas v. Willcuts, supra, on this proposition, the United States Supreme Court said:

"In the present case, the net income of the trust fund, which was paid to the wife under the decree, stands substantially on the same footing as though he had received the income personally and had been required by the decree to make the payment directly. * * *

· "We find no warrant for a construction which would preclude the laying of the tax against the one who through the discharge of his obligation enjoys the benefit of the income as though he had personally received it."

The court further said: "We have held that income was received by a taxpayer, when, pursuant to a contract, a debt or other obligation was discharged by another for his benefit. The transaction was regarded as being the same in substance as if the money had been paid to the taxpayer and he had transmitted it to his creditor."

In Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 762, 77 L.Ed. 1439, cited by the court in the Douglas Case, in construing the Revenue Act (43 Stat. 277, 44 Stat. 34, § 219(h), which provides that: "Where any part of the income of a trust is or may be applied to the payment of premiums upon policies on the life of the grantor (except policies of insurance payable to charities), such part of the income of the trust shall be included in computing the net income of the grantor," the court said: "Upon an audit of the returns the Commissioner of Internal Revenue assessed a deficiency to the extent that the income of the trusts had been applied to the payment of premiums on the policies of insurance. There was no attempt to charge against the taxpayer the whole income of the trusts, to charge him with the excess applied to other uses than the preservation of the policies. The deficiency assessment was limited to that part of the income which had kept the policies alive."

This opinion was construing the provision of section 167 (a) (3), 26 U.S.C.A. § 167 (a) (3) and note, which contains the "is or may be applied" clause.

In the case of Commissioner of Internal Revenue v. Grosvenor, 85 F.2d 2, 3, the Circuit Court of Appeals, Second Circuit, in an opinion rendered July 6, 1936, and subsequent to Douglas v. Willcuts, supra, construes this same statute. In that case, Grosvenor established two trusts, one for each of his two infant daughters. By the terms of each, the trustee was to pay the net income to the settlor's wife "to be expended by her for the support, maintenance and education" of the daughter named therein during her minority, "without any liability upon" Mrs. Grosvenor "to account for the expenditure of said income to any person." The Commissioner had assessed the income from each of the trusts to the settlor, personally.

On appeal to the Board of Tax Appeals the Commissioner was reversed, whereupon the cause was appealed to the Circuit Court of Appeals, and that court said: "Subsequent to the Board's decision, the court of final authority determined that the settlor is taxable upon the income of a trust created to discharge his legal obligations and so used. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Helvering v. Stokes, 296 U.S. 551, 56 S.Ct. 308, 80 L.Ed. 389; Helvering v. Coxey, 297 U.S. 694, 56 S.Ct. 498, 80 L.Ed. 986; Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390. Mr. Grosvenor, being admittedly under a legal duty to support his minor children, was directly benefited by the payments of trust income which discharged that duty. Under the foregoing authorities, such income must be taxed as his. He attempts to distinguish them on the ground that here the income was paid to Mrs. Grosvenor without accountability therefor to any one. She was directed, however, to expend it for the support, maintenance, and education of the daughters, and, to the extent that she did so, he was relieved of his parental obligation. In the absence of evidence to the contrary, it should be assumed that all of it was so used. Compare Schweitzer v. Commissioner, 75 F.2d 702, 704 (C.C.A. 7). If it was not in fact so used, he should show that, for the taxpayer has the burden of proving the Commissioner's assessment wrong."

On August 16, 1937, the General Counsel for the Internal Revenue Bureau upon request submitted to the Bureau an opinion involving the exact question at issue in this case. There was a trust estate for the benefit of three minor children. The question was whether or not the income, under a provision in the trusts that in the discretion of the trustee portions of the income could be used for the benefit of the beneficiaries, was taxable to the trustor. The General Counsel, in his opinion, said:

"This office has reached the conclusion that in cases where the trust income, or at least part of it, might, in the discretion of the trustees, have been used to support the minor children of the grantor there should be taxed to the grantor only so much of the trust income as is actually distributed for the support and maintenance of the beneficiaries whom the grantor is legally obligated to support. The fact that the trust income may be distributed for the support of such persons (but actually is not) does not make such income subject to distribution to the grantor within the meaning of section 167 of the Revenue Acts here involved. "The opinion in E. E. Black v. Commissioner, promulgated by the Board of Tax Appeals on July 20, 1937 (36 B.T.A. 346, No. 55, acquiescence published on page 1, this Bulletin [Article 8301]), correctly states the rule. In that case, the trust instruments provided with respect to minor children that the trustees in their sole discretion could pay all or none of the income arising from the respective trusts for the education, maintenance, and support of the children. Any of the income not paid for the benefit of the children was to be added to the trust corpus. The opinion reads in part as follows:

" 'The Commissioner determined a deficiency of $2,559.56 in petitioner's individual income tax for 1934. Aside from minor adjustments which are not assailed, the Commissioner included in petitioner's income $8,000 dividends on corporate shares held by four trusts created by petitioner in 1933, of each of which petitioner's wife and three minor children were the respective beneficiaries. This inclusion the petitioner assails.

" 'We are of opinion that the Commissioner's determination is in error. The trusts were complete and irrevocable. Petitioner had no right to the income either presently or prospectively, and none of it actually came to him. He did not benefit by its use for the support and maintenance of his wife and children or in discharge of any other of his own obligations (cf. Commissioner v. Grosvenor [7 Cir.], 85 F.2d 2), and the trusts were at all times administered with a strict regard for their separate jural personalities (cf. William C. Rands v. Com'r, 34 B.T.A. 1107). There is no occasion, therefore, to regard the income as constructively received by petitioner.'

"Consequently, it is held that none of the income of the trusts in the instant case is taxable to the grantor under section 167 of the Revenue Acts of 1932 and 1934, since no part of the income was distributed or used for the support and maintenance of the beneficiaries (G.C.M. 18972; XVI–33–8882)."

■ The court, therefore, concludes that the trust agreements in question are valid

trusts under the laws of Oklahoma, regardless of the fact that said trust agreements were not acknowledged by the plaintiffs during the taxable year 1932, or filed for record; that, since no part of the income for said trust estates for the year 1932 was used by either of the plaintiffs herein, the income from said trust estates for the year 1932 was not taxable under the Revenue Act to either of the plaintiffs, personally; and, that the plaintiffs in these cases are entitled to recover that portion of the taxes paid for the year 1932 based upon income derived from said trust estates.

Findings of fact, conclusions of law, and a form of judgment consistent with this opinion may be submitted. An exception is allowed the defendant in each case.